Jason A. Scurti (JAS-3688)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Email:  scurtij@gtlaw.com

David O. Batista
Linda M. Reck
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  (954) 765-0500

*Attorneys for Defendants*
*Gershenson and Associates, Inc. and Stephen Gershenson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN MANAGEMENT ASSOCIATION INTERNATIONAL, <br><br> Plaintiff, <br><br> - against - <br><br> STUART SYME, GERSHENSON AND ASSOCIATES, INC., and STEPHEN GERSHENSON, individually and in his capacity as President of GERSHENSON AND ASSOCIATES, INC., <br><br> Defendants. | Civil Action No.:  08 CIV-6998 (SHS) (FM) |

**DEFENDANTS STEPHEN GERSHENSON'S AND
GERSHENSON AND ASSOCIATES, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. i

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF RELEVANT FACTS .................................................................. 3

    A.   The Relevant Parties and Their Relationship............................................... 3

    B.   The Agreement Between Gershenson and AMA........................................... 4

    C.   The Contractual Relationship Between Shaw E&I and G&A ....................... 6

    D.   The April 16, 2008 Project Management Seminar for Shaw E&I .................. 6

    E.   Events Occurring After April 16, 2008......................................................... 7

    F.   AMA's May 23, 2008 Termination of the Agreement ................................. 7

    G.   Gershenson's Offer to Return Any of AMA's Proprietary Information............................ 7

    H.   Gershenson's Assurances to AMA Regarding the Non-Solicitation Provision.................. 8

ARGUMENT ............................................................................................................ 9

    A.   Legal Standard for Expedited Discovery ..................................................... 9

    B.   AMA's Motion for Expedited Discovery Must Be Denied Because AMA Fails to Show Any Probability of Success on the Merits.................................................................. 10

        (i)    AMA's Conduct Prohibits Its Success on the Merits as to Equitable Relief................ 10

        (ii)   AMA Cannot Succeed in Obtaining a Preliminary Injunction ................................. 12

        (iii)  AMA Cannot Succeed on the Merits of its Breach of Contract Claim Against Gershenson.................................................................. 13

        (iv)  AMA Cannot Succeed on the Merits of its Tortious Interference Claim Against Gershenson and G&A .............................................. 15

        (v)   AMA Cannot Succeed on the Merits of its Unfair Competition Claim Against Gershenson and G&A .............................................. 15

        (vi)  AMA Cannot Succeed on the Merits of its Unjust Enrichment Claim Against Gershenson and G&A .............................................. 16

C.  AMA's Motion for Expedited Discovery Must Be Denied Because AMA Fails to Show Irreparable Injury ............................................................................................................ 16

(i)  AMA's Delay in Seeking Injunctive Relief Shows that AMA Will Not Suffer Irreparable Injury ................................................................................................................ 16

(ii)  AMA's Claim of Irreparable Injury Is Nothing More than a Speculative Fear ........ 17

(iii)  AMA Has Not Identified Any Irreparable Harm ...................................................... 19

D.  AMA's Motion for Expedited Discovery Must Be Denied Because AMA's Requested Discovery Lacks Any Connection to the Avoidance of Irreparable Injury or its Claims for Preliminary Injunctive Relief and Is Not Narrowly Tailored Given the Time Constraints ...... 21

E.  AMA's Motion for Expedited Discovery Must Be Denied Because Cannot Show Good Cause for Such Discovery .......................................................................................................... 23

CONCLUSION ............................................................................................................................ 24

# TABLE OF AUTHORITIES

**Federal Cases**

*Alesayi Beverage Corp. v. Canada Dry Corp.*,
   947 F. Supp. 658 (S.D. N.Y. 1996) ......................................................................... 13

*Atyyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) .............................................................................. 9

*Citibank, N.A. v. Citytrust*,
   756 F. 2d 273 (2d Cir. 1985) ................................................................................. 16

*Don King Productions, Inc. v. Hopkins*,
   04 Civ. 9705, 2004 WL 2997800 (S.D.N.Y. Dec. 23, 2004) ................................. 9

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*,
   13 F. Supp. 2d 417 (S.D.N.Y. 1998) ............................................................... 16, 17

*Notaro v. Koch*,
   95 F. R.D. 403 (S.D.N.Y. 1982) ............................................................................. 9

*Prod. Res. Group, LLC v. Oberman*,
   No. 03 Civ. 5366, 2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003) .................. 16, 19

*Qwest Communcations Int'l, Inc. v. Worldquest Networks, Inc.*,
   213 F.R.D. 418 (D. Colo. 2003) ........................................................................... 23

*Stern v. Cosby*,
   246 F.R.D. 453 (S.D.N.Y. 2007) ............................................................................ 9

*Voicestream Wireless Corp. v. All U.S. Communications*,
   149 F. Supp. 2d 29 (S.D.N.Y. 2001) .................................................................... 18

*Voicestream Wireless Corp. v. All U.S. Communications*,
   149 F. Supp. 2d 29 (S.D.N.Y. 2001) .................................................................... 20

*Ward v. LeClaire*,
   2008 U.S. Dist. LEXIS 31880 (N.D. N.Y. Apr. 17, 2008) .................................. 21

**State Cases**

*Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*,
   259 A.D. 2d 932 (N.Y. App. Div. 1999) ............................................................... 10

*McNamara v. Dav-El Services, Inc.*,
   798 N.Y.S. 2d 711 (N.Y. Sup. Ct. 2004) .............................................................. 11

*Triple D & E, Inc. v. Van Buren*,
   339 N.Y.S. 2d 821 (N.Y. Sup. Ct. 1972) .............................................................. 11

*Twin City Physicians Group, P.C. v. Kaushal*,
   225 A.D. 2d 1041 (N.Y. App. Div. 1996) ............................................................. 12

*Weintraub v. Schwartz*,
    131 A.D.2d 663 (N.Y. App. Div. 1987) ..................................................................... 11

## Federal Rules

Federal Rule of Civil Procedure 26(d) .............................................................................. 9

Defendants Stephen Gershenson ("Gershenson") and Gershenson and Associates, Inc. ("G&A") respectfully submit this memorandum of law, together with the accompanying Declaration of Stephen Gershenson, in opposition to the motion for expedited discovery filed by American Management Association International ("AMA").[1] AMA seeks, but fails to establish any entitlement to, expedited discovery in connection with its motion for a preliminary injunction against Gershenson and G&A, among others.[2]

## PRELIMINARY STATEMENT

This is an action by AMA, the self-professed world leader in professional development, against Gershenson, a former independent contractor for AMA and the sole officer and employee of G&A, among others. AMA's Verified Complaint and Motion for Preliminary Injunction and Expedited Discovery arise out of a single training seminar presented to Shaw Environmental & Infrastructure, Inc. ("Shaw E&I") in April 2008.

Despite the fact that Gershenson did not travel to or participate in the delivery of the April 2008 training seminar to Shaw E&I, did not conspire, collude or engage in any other activity designed to steal or divert Shaw E&I from AMA, and did not improperly disclose, use or reveal any of AMA's Proprietary Information, AMA somehow claims that Gershenson breached his purported non-solicitation and confidentiality obligations to AMA. Similarly, despite the fact that AMA's unilateral and improper termination of the subject agreement also terminated

---

[1] Due to AMA's simultaneous service of the Verified Complaint and a combined Motion for Preliminary Injunction and Expedited Discovery, Gershenson and G&A find themselves being required by Local Rule 6.1 to respond to the motion for expedited discovery and then the motion for preliminary injunction prior to responding to the allegations of the Verified Complaint itself. By addressing these motions in this sequence, neither Gershenson nor G&A intend to waive any affirmative defenses or counterclaims they may raise in connection with the Verified Complaint.

[2] This memorandum of law addresses only that portion of AMA's motion and memorandum of law in support of its request for expedited discovery. Gershenson and G&A will file, within the time permitted by this Court's Local Civil Rules, a separate memorandum of law in opposition to AMA's motion for preliminary injunction, which will likely address the substance of AMA's claims in more detail.

Gershenson's obligations under the subject agreement's non-solicitation provision, AMA still seeks to prospectively enforce such provision against Gershenson in the form of a preliminary injunction, which AMA cannot do.

Moreover, AMA fails to mention anywhere in its papers filed with this Court that *after* April 16 when it learned of Defendants' so-called "wrongful scheme to steal" Shaw E&I, AMA continued to *use and profit* from Defendants' personal services by arranging for Gershenson and the other Defendant in this case, Stuart Syme ("Syme"), to *continue to teach* additional AMA seminars to AMA's clients between April 16, 2008 and May 23, 2008, including to separate subsidiaries of The Shaw Group, Inc.[3] During such time and at AMA's request, Gershenson and Syme delivered at least ten (10) separate training seminars in cities such as Chicago, Dallas, Denver, Houston, Huntington Beach, San Francisco and Washington, D.C. AMA never compensated Gershenson or Syme for their personal services for at least half of these seminars, including any reimbursement for their travel. To this day, AMA, in material breach of the subject Agreements, has failed and refused to compensate Defendants thousands of dollars for their personal services and travel rendered on AMA's behalf *after* April 16.

This is not a situation where alleged breaches of contract by Defendants excused AMA from further performance under such agreements -- the situation is much different. To begin, Gershenson and G&A did not breach any agreements with AMA. Nonetheless, AMA alleges to have discovered purported breaches, yet knowingly ignored the breaches for over thirty (30) days, continued to demand performance by Gershenson and Syme, profited from Gershenson and Syme's personal services, and then purposely decided not to compensate Gershenson and Syme for their good efforts. AMA cannot have it both ways. AMA cannot materially breach the

---

[3] The Shaw Group, Inc. is the parent company of Shaw E&I. However, Shaw E&I is a separate and distinct legal entity apart from The Shaw Group, Inc.

Independent Contractor Agreement with Gershenson and simultaneously seek to enforce the restrictive covenants contained in his agreement.  Neither law nor equity will permit one party to an agreement to enjoy its benefits without accepting any of its burdens.

For these reasons, as well as those discussed below in greater detail, AMA is not entitled to a preliminary injunction, and thus expedited discovery.

### STATEMENT OF RELEVANT FACTS

**A.    The Relevant Parties and Their Relationship**

In January 1978, Gershenson established a management consulting firm, G&A, to provide services to various companies and individuals, including AMA.  Declaration of Stephen Gershenson ("Gershenson Decl.") ¶ 4.  Over the years, Gershenson and other individuals associated with G&A delivered hundreds of seminars to thousands of registrants in both public and private seminars, and developed courseware for G&A's clients, including AMA. Gershenson Decl. ¶ 4.

On May 31, 2006, AMA and Gershenson entered into the Independent Contractor Agreement at issue in this litigation (the "Agreement"), a copy of which is attached to AMA's Verified Complaint as Exhibit "B."  Gershenson Decl. ¶ 5.  Pursuant to its terms, the Agreement superseded all prior agreements between AMA and Gershenson and became effective July 1, 2006 for a term of three (3) years.  Agreement, ¶¶ 3, 14.

AMA tenders payment to G&A for personal services rendered by Gershenson and other individuals who are both affiliated with G&A and independent contractors for AMA. Gershenson Decl. ¶ 6.

**B.    The Agreement Between Gershenson and AMA**

The Agreement between Gershenson and AMA confirms that the scope of the Agreement is limited to Gershenson's periodic delivery of just seven (7) particular AMA courses relating to project and process management.  *See* Agreement, ¶ 2 *and* Ex. A of Agreement at p. 4.

The Agreement further confirms that:

(i)    Gershenson may speak, teach, consult and provide services to any other organization aside from AMA;

(ii)    Gershenson may solicit or accept engagements from any of AMA's clients after the expiration of one (1) year following Gershenson's acceptance of an engagement from AMA for that particular client; and

(iii)    the restrictive covenant is limited solely to the delivery of educational or training services substantially similar to those Gershenson provides on behalf of AMA.

In pertinent part, Paragraph 4 of the Exhibit A to the Agreement provides that:

> *Except as expressly provided herein, nothing in this Agreement shall restrict you from offering speaking, teaching consulting or other Services to any other organization, corporation, institution or person.*  Your acceptance of an engagement from AMA, however, indicates your understanding and agreement *not to solicit or accept engagements from AMA's clients or attendees to whom you have provided or will provide Services on behalf of AMA, for one (1) year following the acceptance of an engagement from AMA to serve such client(s) or attendees.*  The foregoing restrictions include, but are not limited to, soliciting attendees for, or accepting from such attendees, assignments for on-site engagements, distribution of non-AMA course materials and/or the presentation of logos, copyrights and trademarks other than those of AMA and related affiliates.  *These restrictions are limited to the delivery of educational or training services substantially similar in scope and/or method of delivery to those you provide on behalf of AMA.*

Agreement, Ex. A, p. 2, ¶ 4 (emphasis added).

After defining AMA's "Proprietary Information" as "information and data of and/or related to AMA gathered or made available during the course of this Agreement including, but not limited to, know-how, methods and processes, customer and membership lists, attendee lists,

business plans and strategies and the like," Paragraph 5 of the Agreement provides that, subject to a broad exception, Gershenson agrees not to disclose, use or exploit AMA's Proprietary Information without AMA's written consent.   Agreement, p. 2.   However, the Agreement expressly excludes both information in the public domain at the time AMA revealed it to Gershenson or that came into the public domain at any time thereafter and information that came into Gershenson's possession independently from the definition of "Proprietary Information." Agreement, p. 2.

As to termination, the Agreement provides that it is terminable by either party upon thirty (30) days written notice, to wit:

> Either party may terminate the Agreement at any time for any reason by giving written notice of such termination to the other party at least thirty (30) days before the termination date provided in such written notice.   As of such termination date, this Agreement and all rights and obligations of both parties hereunder shall cease, except as otherwise provided under this Agreement.

Agreement, Ex. A, p. 3, ¶ 6.   The only exception provided in the Agreement to this clause states that:

> Termination or expiration of this Agreement for any reason shall not release either party from any liability which, at the time of termination or expiration, has already accrued to the other party. Further, specifically, the rights duties and other obligations set forth in paragraphs 5, 8, 10 and 11 of this Agreement shall survive termination of this Agreement.

Agreement, p. 5.   It is significant to note that the limited non-solicitation provision in Paragraph 4 of Exhibit A to the Agreement does not survive termination of the Agreement.[4]

---

[4] AMA has not cited to or attached any contract between it and G&A pertaining to the delivery of training services or containing any non-solicitation provision. *See generally* Verified Complaint, AMA's Memo. of Law.

**C.    The Contractual Relationship Between Shaw E&I and G&A**

In or about July 2005, G&A entered into a written consulting and service agreement with Shaw E&I, pursuant to which G&A agreed to provide consulting services to Shaw E&I (the "Consulting Agreement"). Gershenson Decl. ¶ 7. G&A's Consulting Agreement with Shaw E&I predates the contractual relationship between AMA and The Shaw Group, Inc. *Compare* Gershenson Decl. ¶ 7 *with* Verified Complaint, ¶ 32. G&A's Consulting Agreement with Shaw E&I also predates the contractual relationship between AMA and Shaw E&I, if any. *Compare* Gershenson Decl. ¶ 7 with Verified Complaint, ¶ 32.

Since execution of the Consulting Agreement in 2005, Gershenson and other individuals associated with G&A have performed consulting services for Shaw E&I directly and without objection from AMA. Gershenson Decl. ¶ 8. Gershenson has not accepted any engagement for delivery of project or process management seminars for Shaw E&I from AMA since the effective date of his Agreement with AMA. *Id.* Thus, according to the non-solicitation provision of the Agreement, Gershenson would not be precluded from delivering project or process management seminars directly to Shaw E&I. *Id.* Even so, Gershenson has not taken such action. *Id.*

**D.    The April 16, 2008 Project Management Seminar for Shaw E&I**

Based on written communication from AMA, there was no contract between AMA and Shaw E&I for delivery of any training prior to or at the time of the April 16, 2008 seminar in Atlanta, Georgia. Gershenson Decl. ¶ 9. In regards to the project training seminar presented to Shaw E&I in April 2008, Gershenson did not travel to Atlanta, Georgia or participate in the delivery of the seminar. *Id.* Gershenson did not conspire, collude or engage in any other activity designed to steal or divert Shaw E&I from AMA. *Id.* Gershenson did not disclose, use or reveal

6

any of AMA's Proprietary Information, as that term is defined in his Agreement, in connection with the April 2008 seminar for Shaw E&I. *Id.*

**E.    Events Occurring After April 16, 2008**

Between April 16, 2008 and May 23, 2008, Gershenson and Syme delivered training seminars at the request of and for AMA. Gershenson Decl. ¶ 10. Specifically, Gershenson delivered training seminars at the request of and for AMA on May 5-7, 2008 in Chicago, Illinois, on May 14-16, 2008 in Huntington Beach, California, and on May 19-21, 2008 in Dallas, Texas. *Id.* Syme delivered training seminars at the request of and for AMA on April 28-29, 2008 in Washington, D.C., May 2, 2008 in Houston, Texas, May 6-8, 2008 in Charlotte, North Carolina, May 12-14, 2008 in San Francisco, California, May 16, 2008 in Houston, Texas, May 19-20, 2008 in San Francisco, California, and May 21-23, 2008 in Denver, Colorado. *Id.* AMA has never compensated Gershenson or Syme for any of their personal services related to at least half of these seminars rendered after April 16, 2008, including any reimbursement for their travel. *Id.*

**F.    AMA's May 23, 2008 Termination of the Agreement**

By letter dated May 23, 2008, AMA terminated both the Agreement between it and Gershenson and all assignments for public or onsite programs that Gershenson had been scheduled to deliver. Gershenson Decl. ¶ 11. The May 23, 2008 letter from AMA did not provide 30 days notice of the termination or set forth any reason for the termination. *Id.* Pursuant to the Agreement, the non-solicitation provision does not survive its termination.

**G.    Gershenson's Offer to Return Any of AMA's Proprietary Information**

On June 6, 2008, Gershenson, through his attorneys, responded to AMA as follows:

> Mr. Syme and Mr. Gershenson are willing to return, purge from their electronic systems, and refrain from using or disclosing those materials and intellectual property that may rightfully belong to AMA, provided that AMA agrees to do the same.

7

***

> Please contact the undersigned at your earliest convenience to discuss the demands contained herein and so that arrangements may be made for the exchange of intellectual property belonging to AMA and Mr. Syme or Mr. Gershenson, respectively.

Gershenson Decl. ¶ 12. Neither AMA nor its counsel ever contacted Gershenson or his counsel for the purpose of scheduling a meeting to exchange the intellectual property belonging to the respective parties. *Id.*

**H.    Gershenson's Assurances to AMA Regarding the Non-Solicitation Provision**

On August 7, 2008, Gershenson, through his attorneys, further responded to AMA as follows:

> Notwithstanding and without waiver of any and all of Mr. Gershenson's rights and claims against American Management Association International ("AMA"), including, without limitation, those matters set forth in our letter to you dated June 6, 2008, please be advised that Mr. Gershenson has not, and does not intend to, solicit or accept engagements for delivery of training services (as limited in the Agreement) from AMA's clients to whom he has provided training services on behalf of AMA *"for one (1) year following the completion of an engagement to such client(s)."*

Gershenson Decl. ¶ 13. Prior to and at the time this letter was written, Gershenson did not have a copy of his Agreement in his possession, custody or control. Gershenson Decl. ¶ 14. However, Gershenson did have access to a copy of the Independent Contractor Agreement between AMA and co-defendant Syme. *Id.* At the time, Gershenson presumed that the two independent contractor agreements were identical, but now knows that presumption was incorrect. *Id.* The assurance of non-solicitation that Gershenson provided to AMA affords AMA greater protection than it is entitled, without regard to AMA's breach of and termination of the Agreement. *Id.*

8

## ARGUMENT

**A.    Legal Standard for Expedited Discovery**

Federal Rule of Civil Procedure 26(d) prohibits AMA from seeking discovery from any other parties, including Gershenson and G&A, before the parties confer as required by subsection (f) of the same rule, except as authorized by a stipulation or court order. Fed. R. Civ. P. 26(d) (2008). To determine whether a plaintiff such as AMA is entitled to a court order modifying this prohibition, courts in this District have employed a four-part test established by Judge Edelstein in *Notaro v. Koch*, 95 F. R. D. 403 (S.D.N.Y. 1982). This four-part test requires a plaintiff to demonstrate the following to obtain expedited discovery: (i) irreparable injury, (ii) some probability of success under the merits, (iii) some connection between the expedited discovery and the avoidance of the irreparable injury, and (iv) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendants will suffer if the expedited relief is granted. *See, e.g., Notaro*, 95 F.R.D. at 405. In addition to these factors, courts may also consider whether the requested discovery is narrowly tailored given the time restraints and whether the plaintiff could have avoided such time restraints by acting prior to the discovery request. *See Don King Productions, Inc. v. Hopkins*, 04 Civ. 9705, 2004 WL 2997800, at \*2 (S.D.N.Y. Dec. 23, 2004) (*citing to The Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728 (S.D.N.Y. 1996)).

While courts in this District continue to employ this four-part test, other courts in this District instead have employed a flexible "good cause" test. *Compare Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y. 2007) (employing *Notaro*'s 4-part test to determine entitlement to expedited discovery), *and Atyyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) (employing flexible good cause test to determine entitlement to expedited discovery). Regardless of which standard this Court applies, AMA has not, and cannot, establish any

entitlement to expedited discovery.

**B.     AMA's Motion for Expedited Discovery Must Be Denied Because AMA Fails to Show Any Probability of Success on the Merits**

Despite AMA's conclusory statements otherwise, AMA has not and cannot demonstrate a probability of success on the merits of its claims and thus, cannot establish any entitlement to a preliminary injunction or expedited discovery.

    (i)    <u>AMA's Conduct Prohibits Its Success on the Merits as to Equitable Relief</u>

AMA unequivocally admits that it discovered Gershenson's alleged breach of his Agreement on or about April 16, 2008, but by no later than April 18, 2008. Verified Complaint, ¶¶ 36, 37. Under New York law, when a party to a contract discovers that the other party has breached the contract, the adverse party has "a choice - to treat the entire contract as broken and sue immediately for the breach or reject the proposed breach and continue to treat the contract as valid." *See, e.g., Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D. 2d 932, 934 (N.Y. App. Div. 1999). "The adverse party must, however, make an election and cannot at the same time treat the contract as broken and as subsisting." *Id*. AMA clearly elected the latter option by ignoring the alleged breach and continuing to demand performance under the Agreement from Gershenson through its arrangement of and requests that Gershenson continue to teach additional AMA seminars to AMA's clients. Gershenson Decl. ¶ 10. Specifically, Gershenson delivered training seminars at the request of and for AMA on May 5-7, 2008 in Chicago, Illinois, on May 14-16, 2008 in Huntington Beach, California, and on May 19-21, 2008 in Dallas, Texas. Gershenson Decl. ¶ 10.

After Gershenson continued performing under the Agreement at AMA's behest, AMA failed to compensate Gershenson for his services rendered after April 16, 2008, including any reimbursement for his travel. Gershenson Decl. ¶ 10. To this day, AMA, in material breach of

the Agreement, has failed and refused to compensate Gershenson thousands of dollars for his personal services and travel rendered on AMA's behalf *after* April 16. *See* Gershenson Decl. ¶ 10. AMA's non-payment of monies owed to Gershenson for personal services rendered under the Agreement constitutes AMA's first material breach of the Agreement. *See, e.g. McNamara v. Dav-El Services, Inc.*, 798 N.Y.S. 2d 711 (N.Y. Sup. Ct. 2004).

In addition to and despite the debt owed to Gershenson, AMA unequivocally terminated its Agreement with Gershenson on May 23, 2008 without giving Gershenson any notice, much less the thirty (30) days notice required under the Agreement. Gershenson Decl. ¶ 11. Not only is AMA's written termination of the Agreement a tacit admission that the Agreement was still in effect and binding on the parties after April 16, 2008, AMA's termination without the notice required by the Agreement constitutes AMA's second material breach of the Agreement. *See, e.g. Weintraub v. Schwartz*, 131 A.D.2d 663, 664 (N.Y. App. Div. 1987).

Undaunted by its own material breaches of the Agreement, AMA filed this action against Gershenson for -- ironically -- his alleged breach of the Agreement. AMA also seeks to enforce the Agreement, specifically its non-solicitation and confidentiality provisions, by entry of preliminary and permanent injunctions against Gershenson. However, neither law nor equity will permit one party to an agreement to enjoy its benefits without accepting any of its burdens. *See, e.g., Triple D & E, Inc. v. Van Buren*, 339 N.Y.S. 2d 821, 829 (N.Y. Sup. Ct. 1972) ("[t]he party who breaches an agreement may not enforce the restrictive covenant.").

For the foregoing reasons, AMA's own conduct prohibits success on the merits of its claims for any equitable relief.

(ii)    <u>AMA Cannot Succeed in Obtaining a Preliminary Injunction</u>

In its Verified Complaint, AMA bases its request for a preliminary injunction against Gershenson and G&A on allegations that both Gershenson and G&A violated their "contractual obligations to AMA." Verified Complaint, ¶¶ 51, 63. However, AMA's allegations lack merit.

As to G&A, AMA fails to cite to or attach any contract by and between G&A and AMA to any of the papers filed with this Court, much less a contract containing any form of non-solicitation provision. Nonetheless, AMA's proposed order granting a preliminary injunction attempts to enjoin G&A from soliciting or accepting engagements from AMA's clients or attendees and from disclosing or using AMA's confidential information. In the absence of any written contract between AMA and G&A prohibiting such actions, such relief cannot be granted against G&A. *See, e.g., Twin City Physicians Group, P.C. v. Kaushal*, 225 A.D. 2d 1041, 1042 (N.Y. App. Div. 1996) (denying preliminary injunction against corporate defendants where the record contained no evidence supporting plaintiff's contention that corporate defendants were subject to restrictive covenant). Thus, AMA's allegations of G&A's purported breach of non-existent contractual obligations and request to enforce such non-existent contractual obligations cannot succeed on the merits or support AMA's request for expedited discovery.

As to Gershenson, AMA's request for a preliminary injunction enforcing the non-solicitation and confidentiality provisions of the Agreement lacks legal support. Pursuant to its express terms, the non-solicitation provision does not survive termination of the Agreement and thus, AMA's unilateral termination of the Agreement relieved any and all obligation or rights of the parties as to the limited non-solicitation provision of the Agreement. *See* Agreement, p. 5. Thus, AMA's attempt to enforce a non-solicitation provision that became non-binding and ineffective as of May 23, 2008, due to AMA's own conduct, cannot succeed on the merits or

support AMA's request for expedited discovery.

Moreover, AMA's request for a preliminary injunction enjoining Gershenson from soliciting or accepting engagements from AMA's clients or attendees to whom he provided, or was scheduled to provide, services on behalf of AMA, for a period through and including July 25, 2009 is wholly unsupported by the terms of the Agreement itself. *See* AMA's Proposed Order Granting Preliminary Injunction, p. 2. Gershenson's Agreement with AMA provides no support for such a broad and overreaching injunction because, even if it survived termination, the non-solicitation provision of the Agreement would only prohibit Gershenson from soliciting or accepting engagements from AMA's clients to whom he provided, or was scheduled to provide, training services on behalf of AMA, for a period of *one year from the date of acceptance of an engagement from AMA to serve such clients or attendees.* Agreement, Ex. A, p. 2.

Similarly, although the confidentiality provision survived AMA's termination of the Agreement, AMA's prior material breaches of the Agreement as described above excuse Gershenson from any obligation to comply with the confidentiality provision. *See, e.g., Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 667 (S.D.N.Y. 1996) (holding that a material breach of a contract relieves the other party of its obligations to perform under the contract). Thus, AMA has no legal basis or need to seek equitable relief in the form of a preliminary injunction and expedited discovery as to the confidentiality provision.

    (iii)    <u>AMA Cannot Succeed on the Merits of its Breach of Contract Claim Against Gershenson</u>

Assuming *arguendo* that AMA's allegations regarding Gershenson's role in the April 16, 2008 seminar for Shaw E&I are true, which they are not, these alleged actions do not breach the terms of his Agreement with AMA. On its face, Gershenson's Agreement would only prohibit Gershenson from soliciting or accepting an engagement from Shaw E&I within one (1) year of

13

Gershenson's acceptance of an engagement for Shaw E&I from AMA. *See* Agreement, Ex. A, p. 2, ¶ 4.    Gershenson had not accepted any engagement from AMA to provide training services for Shaw E&I within the one-year period prior to April 2008.  Gershenson Decl. ¶ 15.  Thus, Gershenson could not have, and did not, breach his Agreement, even if he personally delivered or participated in the training seminar to Shaw E&I on April 16, 2008, which he did not. Gershenson Decl. ¶ 8.

Similarly, AMA's allegation that Gershenson breached the Agreement by failing to refer the opportunity to deliver the April 2008 training seminar to Shaw E&I is both nonsensical and contradicted by AMA's other allegations.  In its Verified Complaint, AMA admits that it, not Gershenson, G&A or Syme, knew of and was engaged in discussions with Shaw E&I regarding the April 2008 seminar opportunity prior to the occurrence of the seminar itself.  Verified Complaint, ¶¶ 34, 35.  Indeed, AMA admits that Shaw E&I communicated directly with AMA regarding the April 2008 seminar.  Verified Complaint, ¶ 35.  Because Shaw E&I worked with AMA directly regarding the April 2008 training opportunity and Shaw E&I's inquiry was not directed to Gershenson, there was no reason or obligation for Gershenson to make any referral to AMA.  Agreement, Ex. A, p. 2.  Moreover, the referral provision of the Agreement contains the same time restraints as the non-solicitation provision.  Agreement, Ex. A, p. 2.  Because Gershenson had not accepted any engagement from AMA to provide training services for Shaw E&I within the one-year period prior to April 2008, Gershenson did not, and could not, have breached the Agreement by failing to refer to AMA the April 2008 opportunity of which AMA was already well-aware.

     (iv)    <u>AMA Cannot Succeed on the Merits of its Tortious Interference Claim Against Gershenson and G&A</u>

In support of its motion for preliminary injunction and expedited discovery, AMA relies upon its purported likelihood of success on its tortious interference with a contract claim against Gershenson and G&A.    AMA bases its claim on a self-serving, conclusory assertion that Gershenson and G&A knew, or should have known, about a Training Agreement (as that phrase is defined in the Verified Complaint) between AMA and The Shaw Group, Inc.    Verified Complaint, ¶ 78.  Notably, although AMA cites to and relies upon the Training Agreement for its claims, AMA fails to attach it to any of the papers filed with this Court.    Regardless, and despite AMA's unsupported allegation otherwise, neither Gershenson nor G&A knew about the existence of such Training Agreement until reading about it in the Verified Complaint. Gershenson Decl. ¶ 16.  Gershenson and G&A also did not, and still do not, know the terms of the Training Agreement, including but not limited to any pricing, scope of engagement or upon whom it is binding.  Gershenson Decl. ¶ 16.  Thus, AMA cannot succeed on the merits of its tortious interference claim with a contract against Gershenson or G&A because it simply cannot show that Gershenson and G&A knew of the Training Agreement.

     (v)    <u>AMA Cannot Succeed on the Merits of its Unfair Competition Claim Against Gershenson and G&A</u>

In support of its motion for preliminary injunction and expedited discovery, AMA relies upon its purported likelihood of success on its unfair competition claim against Gershenson and G&A.  Such reliance is misplaced.  "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea *either through fraud or deception, or an abuse of fiduciary or confidential relationship*."  *Prod. Res. Group, LLC v. Oberman*, No. 03 Civ. 5366,

2003 WL 22350939 at *15 (S.D.N.Y. Aug. 27, 2003) (internal citations omitted) (emphasis added).  As described above, AMA cannot demonstrate that Gershenson or G&A actually engaged in the requisite fraudulent, deceptive or abusive activity and thus, cannot succeed on its unfair competition claim against Gershenson or G&A.

(vi)   AMA Cannot Succeed on the Merits of its Unjust Enrichment Claim Against Gershenson and G&A

In support of its motion for preliminary injunction and expedited discovery, AMA relies upon its purported likelihood of success on its unjust enrichment claim against Gershenson and G&A.  However, AMA fails to cite to any legal support for the notion that it is entitled to any preliminary injunctive relief on an unjust enrichment claim where the ultimate relief sought is monetary damages.  *See* Verified Complaint, ¶ 100.  Thus, AMA's unjust enrichment claim cannot support its motion for preliminary injunction and expedited discovery.

**C.  AMA's Motion for Expedited Discovery Must Be Denied Because AMA Fails to Show Irreparable Injury**

(i)   AMA's Delay in Seeking Injunctive Relief Shows that AMA Will Not Suffer Irreparable Injury

AMA's delay in seeking injunctive relief against any of the Defendants, including Gershenson and G&A, demonstrates that AMA is not truly threatened with irreparable harm.  *See, e.g. Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417 (S.D.N.Y. 1998).  Because "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights," a "[d]elay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F. 2d 273 (2d Cir. 1985).  Although courts have not imposed rigid deadlines for seeking preliminary injunctive relief, a delay of as little as ten weeks has been held to be too long and bar entry of a preliminary injunction.  *See, e.g., Gidatex, S.R.L.*, 13 F.

16

Supp. 2d at 419 (*citing to Citibank, N.A.*, 756 F. 2d at 276-77).

AMA has not, and cannot, provide any credible explanation for its delay in seeking injunctive relief. *See generally* AMA's Memo. of Law. AMA certainly did not use the four-month delay period to investigate the extent and nature of Gershenson's and G&A's behavior. To the contrary, AMA expressly admits in its Verified Complaint that it discovered Defendants' purported breach of contractual obligations on April 16, 2008. Verified Complaint, ¶ 36. AMA further admits that it knew of Gershenson's and G&A's alleged role in the purported breach by no later than April 18, 2008. Verified Complaint, ¶ 37.

Despite this knowledge, AMA did not notify Gershenson of its concerns, terminate Gershenson's Agreement, commence any lawsuit or seek injunctive relief against Gershenson or G&A. AMA delayed for over a month before taking any action at all in connection with its discovery of Gershenson's purported breach of the Agreement. During that month, and with full knowledge of the purported breach of the Agreement, AMA *continued to use and profit* from both Gershenson's and Syme's personal services by arranging for Gershenson and Syme to continue to teach additional AMA seminars to AMA's clients. Gershenson Decl. ¶ 10. AMA terminated Gershenson's Agreement on May 23, 2008, without any notice, (Gershenson Decl. ¶ 11), and then waited an additional three months before filing the instant lawsuit and seeking injunctive relief. Thus, AMA's claim of irreparable injury is belied by AMA's own dilatory actions and cannot support AMA's motion for preliminary injunction and expedited discovery.

(ii)    AMA's Claim of Irreparable Injury Is Nothing More than a Speculative Fear

In its memorandum of law in support of the motion for expedited discovery and preliminary injunction, AMA alleges that it will be irreparably injured if Defendants, including Gershenson and G&A, are permitted to continue soliciting and servicing AMA's clients and

using AMA's confidential information to do so.  Not only does such an allegation presuppose

that Gershenson and G&A have already acted improperly, it relies upon AMA's other allegations

that Gershenson and G&A violated their purported contractual obligations to AMA by presenting

a training seminar to Shaw E&I in April 2008.  As described above, AMA has not made any

showing that Gershenson or G&A have breached or will breach any valid contractual obligations

to AMA.  Thus, AMA's claim of irreparable injury based on its unsupported and unfounded

theory that Gershenson and G&A may solicit or provide services to some unidentified customer

at some point in the future constitutes nothing more than AMA's remote and speculative fears,

and cannot support expedited discovery.  *See, e.g., Voicestream Wireless Corp. v. All U.S.*

*Communications*, 149 F. Supp. 2d 29, 37 (S.D.N.Y. 2001) ("[a] preliminary injunction will not

issue based upon remote or speculative fears.").

     In addition to their speculative nature, AMA's fears are unfounded.  On August 7, 2008,[5]

Gershenson, through his counsel, informed AMA in writing as follows:

> Notwithstanding and without waiver of any and all of Mr.
> Gershenson's rights and claims against American Management
> Association International ("AMA"), including, without limitation,
> those matters set forth in our letter to you dated June 6, 2008,
> please be advised that Mr. Gershenson has not, and does not
> intend to, solicit or accept engagements for delivery of training
> services (as limited in the Agreement) from AMA's clients to
> whom he has provided training services on behalf of AMA "*for
> one (1) year following the completion of an engagement to such
> client(s).*"

Gershenson Decl. ¶ 13.  Gershenson voluntarily provided such assurances to AMA despite the

fact that: (i) Gershenson's Agreement, which he was not in possession of at the time, contained a

less restrictive non-solicitation provision; (ii) he was not bound by the restrictive covenant

provision of the Agreement since such provision did not survive termination of the Agreement;

---

[5] This was eight (8) days before Gershenson was served with process, and before he was aware of the lawsuit.

and (iii) AMA materially breached the Agreement and was precluding from enforcing any restrictive covenants of the Agreement. Ironically, Gershenson provided such assurances to AMA with the hope of avoiding costly, protracted and unwarranted litigation. Gershenson Decl. ¶ 14. The fact that AMA continues to prosecute this litigation against Gershenson in spite of his written assurances is evidence of its heavy handed treatment of Gershenson and proof positive that no good deed goes unpunished. Whatever the motive behind AMA's assertion of these claims, it can hardly support a claim for expedited discovery or irreparable harm on these facts.

(iii)    AMA Has Not Identified Any Irreparable Harm

AMA alleges that Gershenson and G&A have already stolen business from AMA and that, if permitted to continue soliciting and servicing AMA's clients, AMA will be irreparably harmed. AMA Memo. of Law, pp. 18, 21. In short, AMA fears that it will suffer a loss of income to Gershenson and G&A.

As a matter of law, lost sales or income do not constitute irreparable harm because they are fully compensable with monetary damages. *See, e.g., Prod. Res. Group, LLC v. Oberman,* No. 03 Civ. 5366, 2003 WL 22350939, at *7 (S.D.N.Y. Aug. 27, 2003). In this case, AMA claims that it has a contract with at least one customer, The Shaw Group, Inc., that "Syme, Gershenson and G&A intentionally colluded to interfere with AMA's client relationship with Shaw -- *a relationship they knew was worth countless millions of dollars* . . . ." AMA Memo of Law, pp. 7, 8 (emphasis in original). Clearly, AMA's monetary damages (including lost sales or income) would be easily calculable if AMA ultimately prevailed, based upon a review of AMA's Training Agreement with The Shaw Group, Inc. and past and projected earning for training services to The Shaw Group, Inc., among other things.

AMA also seeks expedited discovery to prevent the use or disclosure of its purportedly confidential information. However, there is no threat of irreparable harm to AMA with respect to its claimed confidential and proprietary information. Notwithstanding the fact that AMA has materially breached its Agreement with Gershenson and is precluded from seeking equitable relief from this Court, on June 6, 2008, Gershenson, through his attorneys, informed AMA as follows:

> Mr. Syme and Mr. Gershenson are willing to return, purge from their electronic systems, and refrain from using or disclosing those materials and intellectual property that may rightfully belong to AMA, provided that AMA agrees to do the same.
>
> ***
>
> Please contact the undersigned at your earliest convenience to discuss the demands contained herein and so that arrangements may be made for the exchange of intellectual property belonging to AMA and Mr. Syme or Mr. Gershenson, respectively.

Gershenson Decl. ¶ 12. Neither AMA nor its counsel ever contacted Gershenson or his counsel for the purpose of scheduling a meeting to exchange the intellectual property belonging to the respective parties. Gershenson Decl.¶ 12. Instead, AMA rushed into this Court seeking the extraordinary relief of a preliminary injunction and expedited discovery, and claiming irreparable harm where the harm could have been avoided -- and can still be avoided -- by the less drastic means of a simple phone call. At best, AMA's claimed irreparable harm is self-inflicted and purely speculative, for which no preliminary injunction or expedited discovery should lie. *See, e.g., Voicestream Wireless Corp. v. All U.S. Communications*, 149 F. Supp. 2d 29, 37 (S.D.N.Y. 2001).

**D.     AMA's Motion for Expedited Discovery Must Be Denied Because AMA's Requested Discovery Lacks Any Connection to the Avoidance of Irreparable Injury or its Claims for Preliminary Injunctive Relief and Is Not Narrowly Tailored Given the Time Constraints**

In its memorandum of law and proposed order granting expedited discovery, AMA seeks a one-sided fishing expedition into Gershenson's and G&A's businesses, regardless of whether the information sought bears any connection to the avoidance of irreparable injury or AMA's claims for preliminary injunctive relief.   AMA's requested discovery and proposed order granting expedited discovery belie AMA's allegation that it is seeking "limited" discovery.

As part of its requested expedited discovery, AMA seeks to take the depositions of Gershenson and a Rule 30(b)(6) representative of G&A.  However, AMA provides absolutely no limitations on the scope of inquiry or topics to be covered at such a deposition and apparently seeks unbridled questioning of Gershenson and G&A's corporate representative.  Thus, AMA's requested depositions have absolutely no connection to the avoidance or irreparable injury or even to AMA's request for preliminary injunctive relief.

Additionally, despite AMA's acknowledgement that Gershenson resides and G&A does business in Boca Raton, Florida, AMA seeks to force Gershenson and G&A's corporate representative to travel to New York to sit for deposition within just two (2) weeks of notice upon their counsel.  AMA does not, and cannot, provide any basis for such an unreasonable demand other than AMA's self-serving choice of filing this action in New York.  AMA should be required to take Defendants' depositions where they reside. *See e.g. Ward v. LeClaire*, 2008 U.S. Dist. LEXIS 31880 at *13-14 (N.D. N.Y. Apr. 17, 2008) (recognizing that there exists a presumption that the deposition of a defendant should "be held in the district of his residence" and that "since the plaintiff is free to choose the forum to litigate, and "defendants are not before the court by choice, it is the plaintiff who should bear any reasonable burdens of inconvenience

21

that the action presents") (original citations omitted). Here, AMA has not met its burden of presenting peculiar circumstances which justify an order directing that Defendants' depositions be taken in a different location than where they reside.

As part of its requested expedited discovery, AMA seeks to serve requests for production upon Gershenson and G&A that request seven (7) areas of documents that are overbroad and lack any connection to the avoidance or irreparable injury or even to AMA's request for preliminary injunctive relief. AMA wholly fails to indicate any time frame for which it seeks documents. Both Gershenson and G&A have been in business for over 30 years and thus, AMA's requested document production would take an inordinate amount of time, effort and expense to compile. Gershenson Decl. ¶ 17. Thus, AMA's requests for production of documents are not narrowly tailored in light of the time constraints.

Notwithstanding the lack of time frame, AMA's requests for production are themselves objectionable for a multitude of reasons, including but not limited to their vagueness and overbroad nature. As just one example, AMA seeks production of documents concerning Gershenson's and G&A's "business relationship with the Shaw Group, Inc. ("Shaw") including without limitation all documents concerning any services provided by them, collectively or individually, to Shaw or any other AMA customer." AMA's Proposed Order Granting Expedited Discovery, p. 2. While the first portion of this request appears to limit the inquiry to business relationship with Shaw, the latter portion of the request conflicts with this purported limitation by referring to services provided to "Shaw or any other AMA customer." Moreover, the Agreement upon which AMA bases this action concerns the delivery of certain specified AMA training seminars *only*, yet this request encompasses documents relating to consulting or other services that Gershenson or G&A may have provided to Shaw that were outside of and

22

permitted by the Agreement. Lastly, this request seeks documents that clearly pre-date the current action, which have no bearing on the issuance of a preliminary injunction that is designed to preserve the status quo pending a final determination on the merits. *See, e.g., Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 420-421 (D. Colo. 2003). Each of AMA's requests for six other categories of documents suffer from the same or similar deficiencies and thus, lack any connection to the avoidance of irreparable injury or even to AMA's claims for preliminary injunctive relief.[6]

Lastly, as explained above, AMA could have, but did not, avoid the time restraints artificially imposed by AMA in this action. Not only did AMA delay for four months before filing any action with this Court, AMA could have secured the return of its purportedly confidential information from Gershenson had AMA simply scheduled a meeting. For the foregoing reasons, among others, AMA's request for expedited discovery in the form of requests for production must be denied.

**E.    AMA's Motion for Expedited Discovery Must Be Denied Because Cannot Show Good Cause for Such Discovery**

In its memorandum of law in support of its motion for expedited discovery and preliminary injunction, AMA fails to specifically identify any "good cause" to expedite the normal discovery process. *See* AMA's Memo. of Law, pp. 20-22. As described above, the claims relied upon by AMA to support its request for a preliminary injunction and expedited discovery lack both legal and factual merit.

---

[6] Many of AMA's requests for production suffer from additional deficiencies, including but not limited to encompassing personal, rather than business, communications. By citing examples of the deficiencies herein, Gershenson and G&A do not waive and expressly reserve any and all objections it may have to the requests pursuant to the Federal Rules of Civil Procedure.

23

Moreover, AMA's own conduct negates its allegations that without expedited discovery, it would suffer additional irreparable harm and thus, this action should proceed on an expedited basis.  In contrast, if the Court orders Gershenson and G&A to participate in and devote their limited resources to the expedited discovery process requested by AMA, Gershenson will suffer substantial hardship, prejudice and interruption to his personal life as well as business practices and operations.

For the foregoing reasons, among others, AMA fails to demonstrate good cause sufficient to support its request for expedited discovery.

## <u>CONCLUSION</u>

Based upon the foregoing, AMA's Motion for Expedited Discovery should be denied.


Dated:  New York, New York
        August 21, 2008

                              GREENBERG TRAURIG, LLP

                              By: _____
                                  Jason A. Scurti (JAS-3688)
                                  200 Park Avenue
                                  New York, New York 10166
                                  Telephone: (212) 801-9200
                                  Email:  scurtij@gtlaw.com
                                  *Attorneys for Defendants*
                                  *Gershenson and Associates, Inc. and Stephen*
                                  *Gershenson*

Of counsel:

Greenberg Traurig, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  (954) 765-0500
DAVID O. BATISTA
Florida Bar No. 175803
LINDA M. RECK
Florida Bar No. 0669474