Jason A. Scurti (JAS-3688)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Email:  scurtij@gtlaw.com

David O. Batista
Linda M. Reck
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  (954) 765-0500

*Attorneys for Defendants*
*Gershenson and Associates, Inc. and Stephen Gershenson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN MANAGEMENT ASSOCIATION INTERNATIONAL,<br><br>Plaintiff,<br><br>- against -<br><br>STUART SYME,<br>GERSHENSON AND ASSOCIATES, INC., and<br>STEPHEN GERSHENSON, individually<br>and in his capacity as President of<br>GERSHENSON AND ASSOCIATES, INC.,<br><br>Defendants. | **Civil Action No.:  08 CIV-6998 (SHS) (FM)** |

**DEFENDANTS STEPHEN GERSHENSON'S AND
GERSHENSON AND ASSOCIATES, INC.'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF RELEVANT FACTS ................................................................... 3

    A.    The Relevant Parties and Their Relationship ............................................. 3

    B.    The Agreement Between Gershenson and AMA ......................................... 3

    C.    The Contractual Relationship Between Shaw E&I and G&A ..................... 5

    D.    The April 16, 2008 Project Management Seminar for Shaw E&I ............. 6

    E.    Events Occurring After April 16, 2008 ....................................................... 6

    F.    AMA's May 23, 2008 Termination of the Agreement .............................. 7

    G.    Gershenson's Offer to Return Any of AMA's Proprietary Information ..... 7

    H.    Gershenson's Assurances to AMA Regarding the Non-Solicitation Provision ...... 8

ARGUMENT .......................................................................................................... 8

    A.    Legal Standard for Preliminary Injunction ............................................... 8

    B.    AMA Cannot Demonstrate Any Likelihood of Success on or Serious Questions as to the Merits ......................................................................... 9

        (i)    AMA Cannot Succeed on the Merits of its Breach of Contract Claim Against Gershenson ............................................................... 9

        (ii)    AMA Cannot Succeed on the Merits of its Unfair Competition Claim Against Gershenson and G&A ................................................. 11

        (iii)    AMA Cannot Succeed on the Merits of its Unjust Enrichment Claim Against Gershenson and G&A ........................................... 13

        (iv)    AMA Cannot Succeed on the Merits of its Tortious Interference Claim Against Gershenson and G&A ........................................... 15

        (v)    AMA Cannot Obtain Equitable Relief Pursuant to the Doctrine of Unclean Hands ............................................................................ 15

        (vi)    AMA Cannot Succeed in Obtaining a Preliminary Injunction ...... 18

C.    AMA Cannot Demonstrate Irreparable Harm.........................................19

    (i)    AMA's Delay in Seeking Injunctive Relief Shows that AMA Will Not Suffer Irreparable Harm.............................................................19

    (ii)    AMA's Claim of Irreparable Harm Is Nothing More than a Speculative Fear ..............................................................................21

    (iii)    AMA Has Not Identified Any Irreparable Harm.....................................22

D.    AMA Cannot Establish that the Balance of Hardships Tip in AMA's Favor ......24

CONCLUSION.........................................................................................25

## TABLE OF AUTHORITIES

**Page**

### *Federal Cases*

*Alesayi Beverage Corp. v. Canada Dry Corp.,*
  947 F. Supp. 658 (S.D.N.Y. 1996) ................................................................. 19

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,*
  448 F.3d 573 (2d Cir. 2006) ........................................................................ 13

*Citibank, N.A. v. Citytrust,*
  756 F. 2d 273 (2d Cir. 1985) ....................................................................... 20

*EarthWeb, Inc. v. Schlack,*
  71 F. Supp. 2d 299 (S.D.N.Y. 1999) ............................................................ 8

*EarthWeb, Inc. v. Schlack,*
  No. 99-9302, 2000 WL 1093320 (2d Cir. May 18, 2000) .......................... 9

*Geritrx Corp. v. Dermarite Indus., LLC,*
  910 F. Supp. 955 (S.D.N.Y. 1996) .............................................................. 9

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.,*
  13 F. Supp. 2d 417 (S.D.N.Y. 1998) ........................................................... 20

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007) .......................................................................... 8

*In re UFG, Int'l, Inc.,*
  225 B.R. 51 (S.D.N.Y. 1998) ....................................................................... 17

*Johnson & Johnson v. Actavis Group HF,*
  No. 06 Civ. 8209, 2008 WL 228061 (S.D.N.Y. January 25, 2008) ............ 16

*Med. Soc'y of the State of New York v. Toia,*
  560 F.2d 535 (2d Cir. 1977) ........................................................................ 8

*Prod. Res. Group, LLC v. Oberman,*
  No. 03 Civ. 5366, 2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003) ........ 11, 22

*Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.,*
  154 F. Supp. 2d 586 (S.D.N.Y. 2001) ......................................................... 13

*Voicestream Wireless Corp. v. All U.S. Communications,*
  149 F. Supp. 2d 29 (S.D.N.Y. 2001) ....................................................... 21, 23

### *State Cases*

*BDO Seidman v. Hirshberg,*
  93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999) ................................................... 9

i

*Columbia Ribbon & Carton Mfg. Co. v. A-1-A Corp.,*
  42 N.Y.2d 496, 398 N.Y.S.2d 1004 (1977) ................................................................9

*Doubleclick Inc. v. Henderson,*
  No. 11614/97, 1997 N.Y. Misc. LEXIS 577  (N.Y. Sup. Ct. Nov. 5, 1997) ............12

*Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.,*
  259 A.D. 2d 932, 686 N.Y.S.2d 911 (N.Y. App. Div. 1999) ...................................16

*McNamara v. Dav-El Services, Inc.,*
  798 N.Y.S. 2d 711 (Sup. Ct. Suffolk County 2004) ...............................................17

*Rick J. Jarvis Assoc. Inc. v. Stotler,*
  216 A.D.2d 649, 627 N.Y.S.2d 810 (3d Dep't 1995) .............................................11

*Triple D & E, Inc. v. Van Buren,*
  339 N.Y.S. 2d 821 (N.Y. Sup. Ct. 1972) ...............................................................17

*Twin City Physicians Group, P.C. v. Kaushal,*
  225 A.D. 2d 1041 (N.Y. App. Div. 1996) ...............................................................18

*Weintraub v. Schwartz, 131 A.D.2d 663, 664,*
  516 N.Y.S. 2d 946 (N.Y. App. Div. 1987) ...............................................................17

Defendants Stephen Gershenson ("Gershenson") and Gershenson and Associates, Inc. ("G&A") respectfully submit this memorandum of law, together with the previously filed Declaration of Stephen Gershenson, in opposition to the motion for preliminary injunction filed by American Management Association International ("AMA"). AMA seeks, but fails to establish any entitlement to, a preliminary injunction against Gershenson and G&A, among others.

<u>**PRELIMINARY STATEMENT**</u>

This is an action by AMA, the self-professed world leader in professional development, against Gershenson, a former independent contractor for AMA and the sole officer and employee of G&A, among others. AMA's Verified Complaint and Motion for Preliminary Injunction and Expedited Discovery arise out of a single training seminar presented to Shaw Environmental & Infrastructure, Inc. ("Shaw E&I") in April 2008.

Despite the fact that Gershenson did not travel to or participate in the delivery of the April 2008 training seminar to Shaw E&I, did not conspire, collude or engage in any other activity designed to steal or divert Shaw E&I from AMA, and did not improperly disclose, use or reveal any of AMA's Proprietary Information, AMA somehow claims that Gershenson breached his purported non-solicitation and confidentiality obligations to AMA. Similarly, despite the fact that AMA's unilateral and improper termination of the subject agreement also terminated Gershenson's obligations under the subject agreement's non-solicitation provision, AMA still seeks to prospectively enforce such provision against Gershenson in the form of a preliminary injunction, which AMA cannot do.

Moreover, AMA fails to mention anywhere in its papers filed with this Court that *after* April 16 when it learned of Defendants' so-called "wrongful scheme to steal" Shaw E&I, AMA continued to *use and profit* from Defendants' personal services by arranging for Gershenson and

1

the other Defendant in this case, Stuart Syme ("Syme"), to *continue to teach* additional AMA seminars to AMA's clients between April 16, 2008 and May 23, 2008, including to separate subsidiaries of The Shaw Group, Inc.[1]  During such time and at AMA's request, Gershenson and Syme delivered at least ten (10) separate training seminars in cities such as Chicago, Dallas, Denver, Houston, Huntington Beach, San Francisco and Washington, D.C.   AMA never compensated Gershenson or Syme for their personal services for at least half of these seminars, including any reimbursement for their travel.   To this day, AMA, in material breach of the subject Agreements, has failed and refused to compensate Defendants thousands of dollars for their personal services and travel rendered on AMA's behalf *after* April 16.

This is not a situation where alleged breaches of contract by Defendants excused AMA from further performance under such agreements -- the situation is much different.   To begin, Gershenson and G&A did not breach any agreements with AMA.   Nonetheless, AMA alleges to have discovered purported breaches, yet knowingly ignored the breaches for over thirty (30) days, continued to demand performance by Gershenson and Syme, profited from Gershenson and Syme's personal services, and then purposely decided not to compensate Gershenson and Syme for their good efforts.   AMA cannot have it both ways.   AMA cannot materially breach the Independent Contractor Agreement with Gershenson and simultaneously seek to enforce the restrictive covenants contained in his agreement.   Neither law nor equity will permit one party to an agreement to enjoy its benefits without accepting any of its burdens.

AMA fails to proffer any evidence -- and none exists -- based upon personal knowledge to support its contentions that Gershenson and G&A have engaged in unfair competition, been unjustly enriched or tortiously interfered with AMA's clients.

---

[1] The Shaw Group, Inc. is the parent company of Shaw E&I.  However, Shaw E&I is a separate and distinct legal entity apart from The Shaw Group, Inc.

For these reasons, as well as those discussed below in greater detail, AMA is not entitled to a preliminary injunction.

## STATEMENT OF RELEVANT FACTS

**A.      The Relevant Parties and Their Relationship**

In January 1978, Gershenson established a management consulting firm, G&A, to provide services to various companies and individuals, including AMA. Declaration of Stephen Gershenson ("Gershenson Decl.") ¶ 4. Over the years, Gershenson and other individuals associated with G&A delivered hundreds of seminars to thousands of registrants in both public and private seminars, and developed courseware for G&A's clients, including AMA. Gershenson Decl. ¶ 4.

On May 31, 2006, AMA and Gershenson entered into the Independent Contractor Agreement at issue in this litigation (the "Agreement"), a copy of which is attached to AMA's Verified Complaint as Exhibit "B." Gershenson Decl. ¶ 5. Pursuant to its terms, the Agreement superseded all prior agreements between AMA and Gershenson and became effective July 1, 2006 for a term of three (3) years. Agreement, ¶¶ 3, 14.

AMA tenders payment to G&A for personal services rendered by Gershenson and other individuals who are both affiliated with G&A and independent contractors for AMA. Gershenson Decl. ¶ 6.

**B.      The Agreement Between Gershenson and AMA**

The Agreement between Gershenson and AMA confirms that the scope of the Agreement is limited to Gershenson's periodic delivery of just seven (7) particular AMA courses relating to project and process management. *See* Agreement, ¶ 2 *and* Ex. A of Agreement at p. 4.

The Agreement further confirms that:

(i)      Gershenson may speak, teach, consult and provide services to any other

3

organization aside from AMA;

(ii)    Gershenson may solicit or accept engagements from any of AMA's clients after the expiration of one (1) year following Gershenson's acceptance of an engagement from AMA for that particular client; and

(iii)    the restrictive covenant is limited solely to the delivery of educational or training services substantially similar to those Gershenson provides on behalf of AMA.

In pertinent part, Paragraph 4 of the Exhibit A to the Agreement provides that:

> *Except as expressly provided herein, nothing in this Agreement shall restrict you from offering speaking, teaching consulting or other Services to any other organization, corporation, institution or person.* Your acceptance of an engagement from AMA, however, indicates your understanding and agreement *not to solicit or accept engagements from AMA's clients or attendees to whom you have provided or will provide Services on behalf of AMA, for one (1) year following the acceptance of an engagement from AMA to serve such client(s) or attendees.* The foregoing restrictions include, but are not limited to, soliciting attendees for, or accepting from such attendees, assignments for on-site engagements, distribution of non-AMA course materials and/or the presentation of logos, copyrights and trademarks other than those of AMA and related affiliates. *These restrictions are limited to the delivery of educational or training services substantially similar in scope and/or method of delivery to those you provide on behalf of AMA.*

Agreement, Ex. A, p. 2, ¶ 4 (emphasis added).

After defining AMA's "Proprietary Information" as "information and data of and/or related to AMA gathered or made available during the course of this Agreement including, but not limited to, know-how, methods and processes, customer and membership lists, attendee lists, business plans and strategies and the like," Paragraph 5 of the Agreement provides that, subject to a broad exception, Gershenson agrees not to disclose, use or exploit AMA's Proprietary Information without AMA's written consent. Agreement, p. 2. However, the Agreement expressly excludes both information in the public domain at the time AMA revealed it to Gershenson or that came into the public domain at any time thereafter and information that came

4

into Gershenson's possession independently from the definition of "Proprietary Information."

Agreement, p. 2.

As to termination, the Agreement provides that it is terminable by either party upon thirty (30) days written notice, to wit:

> Either party may terminate the Agreement at any time for any reason by giving written notice of such termination to the other party at least thirty (30) days before the termination date provided in such written notice.   As of such termination date, this Agreement and all rights and obligations of both parties hereunder shall cease, except as otherwise provided under this Agreement.

Agreement, Ex. A, p. 3, ¶ 6.  The only exception provided in the Agreement to this clause states that:

> Termination or expiration of this Agreement for any reason shall not release either party from any liability which, at the time of termination or expiration, has already accrued to the other party. Further, specifically, the rights duties and other obligations set forth in paragraphs 5, 8, 10 and 11 of this Agreement shall survive termination of this Agreement.

Agreement, p. 5.  It is significant to note that the limited non-solicitation provision in Paragraph 4 of Exhibit A to the Agreement does not survive termination of the Agreement.[2]

## C.    The Contractual Relationship Between Shaw E&I and G&A

In or about July 2005, G&A entered into a written consulting and service agreement with Shaw E&I, pursuant to which G&A agreed to provide consulting services to Shaw E&I (the "Consulting Agreement").  Gershenson Decl. ¶ 7.  G&A's Consulting Agreement with Shaw E&I predates the contractual relationship between AMA and The Shaw Group, Inc.  *Compare* Gershenson Decl. ¶ 7 *with* Verified Complaint, ¶ 32.  G&A's Consulting Agreement with Shaw E&I also predates the contractual relationship between AMA and Shaw E&I, if any.  *Compare*

---

[2] AMA has not cited to or attached any contract between it and G&A pertaining to the delivery of training services or containing any non-solicitation provision. *See generally* Verified Complaint, AMA's Memo. of Law.

Gershenson Decl. ¶ 7 with Verified Complaint, ¶ 32.

Since execution of the Consulting Agreement in 2005, Gershenson and other individuals associated with G&A have performed consulting services for Shaw E&I directly and without objection from AMA. Gershenson Decl. ¶ 8. Gershenson has not accepted any engagement for delivery of project or process management seminars for Shaw E&I from AMA since the effective date of his Agreement with AMA. *Id.* Thus, according to the non-solicitation provision of the Agreement, Gershenson would not be precluded from delivering project or process management seminars directly to Shaw E&I. *Id.* Even so, Gershenson has not taken such action. *Id.*

**D.    The April 16, 2008 Project Management Seminar for Shaw E&I**

Based on written communication from AMA, there was no contract between AMA and Shaw E&I for delivery of any training prior to or at the time of the April 16, 2008 seminar in Atlanta, Georgia. Gershenson Decl. ¶ 9.  In regards to the project training seminar presented to Shaw E&I in April 2008, Gershenson did not travel to Atlanta, Georgia or participate in the delivery of the seminar. *Id.* Gershenson did not conspire, collude or engage in any other activity designed to steal or divert Shaw E&I from AMA. *Id.* Gershenson did not disclose, use or reveal any of AMA's Proprietary Information, as that term is defined in his Agreement, in connection with the April 2008 seminar for Shaw E&I. *Id.*

**E.    Events Occurring After April 16, 2008**

Between April 16, 2008 and May 23, 2008, Gershenson and Syme delivered training seminars at the request of and for AMA. Gershenson Decl. ¶ 10. Specifically, Gershenson delivered training seminars at the request of and for AMA on May 5-7, 2008 in Chicago, Illinois, on May 14-16, 2008 in Huntington Beach, California, and on May 19-21, 2008 in Dallas, Texas.

*Id.* Syme delivered training seminars at the request of and for AMA on April 28-29, 2008 in Washington, D.C., May 2, 2008 in Houston, Texas, May 6-8, 2008 in Charlotte, North Carolina, May 12-14, 2008 in San Francisco, California, May 16, 2008 in Houston, Texas, May 19-20, 2008 in San Francisco, California, and May 21-23, 2008 in Denver, Colorado. *Id.* AMA has never compensated Gershenson or Syme for any of their personal services related to at least half of these seminars rendered after April 16, 2008, including any reimbursement for their travel. *Id.*

**F.      AMA's May 23, 2008 Termination of the Agreement**

By letter dated May 23, 2008, AMA terminated both the Agreement between it and Gershenson and all assignments for public or onsite programs that Gershenson had been scheduled to deliver.   Gershenson Decl. ¶ 11.    The May 23, 2008 letter from AMA did not provide 30 days notice of the termination or set forth any reason for the termination.   *Id.* Pursuant to the Agreement, the non-solicitation provision does not survive its termination.

**G.      Gershenson's Offer to Return Any of AMA's Proprietary Information**

On June 6, 2008, Gershenson, through his attorneys, responded to AMA as follows:

> Mr. Syme and Mr. Gershenson are willing to return, purge from their electronic systems, and refrain from using or disclosing those materials and intellectual property that may rightfully belong to AMA, provided that AMA agrees to do the same.
>
> ***
>
> Please contact the undersigned at your earliest convenience to discuss the demands contained herein and so that arrangements may be made for the exchange of intellectual property belonging to AMA and Mr. Syme or Mr. Gershenson, respectively.

Gershenson Decl. ¶ 12.  Neither AMA nor its counsel ever contacted Gershenson or his counsel for the purpose of scheduling a meeting to exchange the intellectual property belonging to the respective parties. *Id.*

**H.     Gershenson's Assurances to AMA Regarding the Non-Solicitation Provision**

On August 7, 2008, Gershenson, through his attorneys, further responded to AMA as follows:

> Notwithstanding and without waiver of any and all of Mr. Gershenson's rights and claims against American Management Association International ("AMA"), including, without limitation, those matters set forth in our letter to you dated June 6, 2008, please be advised that Mr. Gershenson has not, and does not intend to, solicit or accept engagements for delivery of training services (as limited in the Agreement) from AMA's clients to whom he has provided training services on behalf of AMA *"for one (1) year following the completion of an engagement to such client(s)."*

Gershenson Decl. ¶ 13.  Prior to and at the time this letter was written, Gershenson did not have a copy of his Agreement in his possession, custody or control.  Gershenson Decl. ¶ 14.  However, Gershenson did have access to a copy of the Independent Contractor Agreement between AMA and co-defendant Syme.  *Id.*  At the time, Gershenson presumed that the two independent contractor agreements were identical, but now knows that presumption was incorrect.  *Id.*  The assurance of non-solicitation that Gershenson provided to AMA affords AMA greater protection than it is entitled, without regard to AMA's breach of and termination of the Agreement.  *Id.*

## ARGUMENT

**A.     Legal Standard for Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy which should not be routinely granted." *Med. Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977); *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 308 (S.D.N.Y. 1999).  Indeed, a preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).  To obtain a preliminary injunction, AMA must demonstrate:

(1) that it will be irreparably harmed in the absence of the injunction; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case combined with a balance of hardships tipping decidedly in AMA's favor.

*EarthWeb, Inc. v. Schlack*, No. 99-9302, 2000 WL 1093320 at * 2 (2d Cir. May 18, 2000);

*Geritrx Corp. v. Dermarite Indus., LLC*, 910 F. Supp. 955, 959 (S.D.N.Y. 1996).

AMA cannot meet this heavy burden.  As set forth below, AMA has failed to show a likelihood of success on the merits, irreparable harm, or balance of equities in its favor.

**B.     AMA Cannot Demonstrate Any Likelihood of Success on or Serious Questions as to the Merits**

> (i)     AMA Cannot Succeed on the Merits of its Breach of Contract Claim Against Gershenson

AMA devotes much of its motion for preliminary injunction to a discussion of whether the restrictive covenant contained in Gershenson's Agreement is enforceable on its face. However, the facial enforceability of the restrictive covenant is irrelevant because AMA has made no showing of any breach of such covenant by Gershenson.[3]  Absent a breach by Gershenson, AMA cannot prevail on its breach of contract claim.

AMA's conclusory allegation that Gershenson has "usurped AMA's client relationships" is patently insufficient to demonstrate any breach of the Agreement by Gershenson.  *See* AMA's Motion, p. 13.  AMA has not presented an affidavit from a single one of its clients supporting the

---

[3] This memorandum of law does not address the facial validity of the restrictive covenant as to geographic scope, legitimate business interest, etc. in full detail because AMA's complete lack of evidence of any breach of that covenant renders such discussion irrelevant.  However, based upon the courts' distaste for restrictions impeding an employee's right to earn a living, a "restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interest, not harmful to the general public and not unreasonably burdensome to the employee." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389, 690 N.Y.S.2d 854, 857 (1999).  To determine reasonableness, the court must examine, among other things, whether the covenant is reasonably limited geographically and temporally to give no more protection than is necessary to safeguard the protectable interest.  *Columbia Ribbon & Carton Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006 (1977).  As a proponent of enforcement, AMA has the burden of proving that it has a protectable interest and that its covenant is reasonable, neither of which it can meet under the circumstances presented here.  For instance, AMA's non-solicitation provision in the Agreement is overbroad and unenforceable since it has <u>no</u> geographical restriction.

notion that Gershenson improperly solicited or accepted an engagement from a client.

Similarly, AMA's allegation that the single training seminar presented to Shaw E&I in April 2008 constitutes a breach of Gershenson's Agreement is unsupported by, and ignores, the facts. At most, Gershenson's Agreement would only prohibit Gershenson from soliciting or accepting an engagement from Shaw E&I **within one (1) year of Gershenson's acceptance of an engagement for Shaw E&I from AMA**. *See* Agreement, Ex. A, p. 2, ¶ 4 (emphasis added). Similarly, Gershenson's Agreement would only obligate him to refer inquiries to him from Shaw E&I as to training services **within one (1) year of Gershenson's acceptance of an engagement for Shaw E&I from AMA**. *See* Agreement, Ex. A, p. 2, ¶ 4 (emphasis added).

It is undisputed that Gershenson had not accepted any engagement from AMA to provide training services for Shaw E&I within the one-year period prior to April 2008. Gershenson Decl. ¶ 15. Consequently, if he wanted to do so, Gershenson could have presented a training seminar to Shaw E&I in April 2008 without any concern for or breach of the terms of his Agreement. Nonetheless, it is undisputed that Gershenson did not in fact travel to Atlanta, Georgia for the Shaw E&I seminar, participate in the delivery of the seminar, or conspire, collude or engage in any other activity designed to steal or divert Shaw E&I from AMA. Gershenson Decl. ¶ 9. Gershenson also did not disclose, use or reveal any of AMA's Proprietary Information (as that term is defined in the Agreement) in connection with the April 2008 seminar for Shaw E&I. Gershenson Decl. ¶ 9.

In addition, Gershenson was not obligated to refer any inquiry from Shaw E&I regarding the April 2008 training seminar to AMA because he had not accepted any engagement for Shaw E&I from AMA in the prior year. Regardless, AMA admits that it, not Gershenson, knew of and was engaged in direct communications with Shaw E&I regarding the April 2008 seminar

opportunity prior to the occurrence of the seminar itself.  Verified Complaint, ¶¶ 34, 35.

For the foregoing reasons, AMA cannot demonstrate any likelihood of success on the merits or raise sufficiently serious questions as to the merits of its unsubstantiated breach of contract claim against Gershenson.  *See, e.g., Rick J. Jarvis Assoc. Inc. v. Stotler*, 216 A.D.2d 649, 627 N.Y.S.2d 810 (3d Dep't 1995) (affirming denial of preliminary injunction where there was no evidence of any breach of the employment agreement by the defendant, or use by him of any of plaintiff's customer lists, trade secrets or other confidential information, and where defendant's affidavit categorically denied such use).

(ii)    AMA Cannot Succeed on the Merits of its Unfair Competition Claim Against Gershenson and G&A

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea *either through fraud or deception, or an abuse of fiduciary or confidential relationship*."  *Prod. Res. Group, LLC v. Oberman*, No. 03 Civ. 5366, 2003 WL 22350939 at *15 (S.D.N.Y. Aug. 27, 2003) (internal citations omitted) (emphasis added).  AMA's memorandum of law and allegations therein ignore the requirement of fraud, deception or the abuse of fiduciary or confidential relationship.

Aside from its conclusory allegation, AMA offers absolutely no *evidence* that Gershenson and G&A engaged in a "deceitful scheme to misappropriate AMA's client relationships by encouraging Shaw to 'postpone' and then cancel seminars previously scheduled through AMA." *See* AMA's Memo, p. 16.  The Verified Complaint and the Affidavit of Patricia Leonard ("Leonard") do not even come close to supporting such a conclusion, which amounts to nothing more than a lawyer's argument.  To be sure, AMA's specific evidence on this issue is that "[o]n or about April 9, 2008, AMA was informed that the April 16, 2008 seminar would be

11

"postponed" until June." Verified Complaint, ¶ 35, Leonard Aff., ¶ 26. The remaining allegations of Defendants' alleged misconduct is based upon rank speculation and supposition, and AMA's carefully crafted allegations that "upon information and belief" or "based upon AMA's investigation" -- and not actual personal knowledge of Leonard -- Defendants' must be doing something wrong. *See e.g.*, Verified Complaint, ¶¶ 38, 41, 42, and 44; Leonard Aff., ¶¶ 29, 32, and 38. AMA does not offer any evidence based upon personal knowledge of an AMA or Shaw E&I employee or otherwise, that Gershenson and G&A encouraged Shaw to 'postpone' and then cancel seminars previously scheduled through AMA. Such a bald allegation cannot support a claim for unfair competition, especially where, as here, the uncontroverted evidence (based upon personal knowledge) is that Gershenson (i) did not travel to Atlanta, Georgia or participate in the delivery of the seminar to Shaw E&I; (ii) did not conspire, collude or engage in any other activity designed to steal or divert Shaw E&I from AMA; and (iii) did not disclose, use or reveal any of AMA's Proprietary Information in connection with the April 2008 seminar for Shaw E&I. Gershenson Decl. ¶ 9.

Not a single case cited by AMA in support of its likelihood of success on its unfair competition claim supports preliminary injunctive relief based upon scant evidence similar to that proffered by AMA. For example, AMA relies upon *Doubleclick Inc. v. Henderson,* No. 11614/97, 1997 N.Y. Misc. LEXIS 577, at *19 (N.Y. Sup. Ct. Nov. 5, 1997) for the proposition that preliminary injunction on unfair competition claim was appropriate where the defendants used former employer's strategic documents to form a competing company. However, the case is easily distinguished. "In *Doubleclick*, the defendants were senior executives working for an Internet company who were caught misappropriating trade secrets as they attempted to form a competing company. Based on the evidence of *actual* misappropriation, which was 'bolstered by

. . . a high probability of 'inevitable disclosure' of trade secrets,' the court enjoined the defendants from launching their company, or accepting employment with any competing company, for a period of six months. *Doubleclick's* holding rested *heavily* on evidence of defendants' overt theft." *Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 608 (S.D. N.Y. 2001).

Here, the uncontroverted evidence is that Gershenson did not participate in, or disclose, use or reveal any of AMA's Proprietary Information in connection with the April 2008 seminar for Shaw E&I.

For the foregoing reasons, AMA cannot demonstrate any likelihood of success on the merits or raise sufficiently serious questions as to the merits of its unsubstantiated unfair competition claim against Gershenson and G&A.

    (iii)    <u>AMA Cannot Succeed on the Merits of its Unjust Enrichment Claim Against Gershenson and G&A</u>

As to its purported unjust enrichment claim, AMA alleges that it "has been damaged in an amount to be determined at trial." Verified Complaint, ¶ 100. Consequently, AMA seeks monetary damages as the ultimate relief for its purported unjust enrichment claim. AMA fails to cite to any legal support for the notion that it is entitled to any preliminary injunctive relief on an unjust enrichment claim where the ultimate relief sought is monetary damages.

Regardless, AMA cannot succeed on the merits of its unjust enrichment claim. To the extent that AMA's unjust enrichment claim relies upon the April 2008 training seminar for Shaw E&I, such seminar occurred during the term of Gershenson's Agreement with AMA. Thus, AMA's unjust enrichment claim is barred because of the existence of a contract between the parties. *See, e.g., Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) ("[t]he existence of a valid and enforceable written

13

contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter") (internal quotations and citations omitted).

Moreover, AMA's allegations that both Gershenson and G&A received unspecified "benefits" of AMA's customer relationships and Proprietary Information without paying AMA for such business are patently insufficient to support an unjust enrichment claim. First, AMA fails to identify those purported "benefits" it bestowed onto Gershenson and G&A from which they have improperly benefitted. As described above, Gershenson's Agreement did not prohibit him from soliciting, accepting or benefitting from the April 2008 training seminar for Shaw E&I. Even so, he did not take such action. Gershenson Decl. ¶ 9. Moreover, G&A has no restrictive covenant with AMA and thus, is permitted to solicit or accept business from any entity or individual. Indeed, G&A has been doing business with Shaw E&I since 2005. Thus, AMA's unjust enrichment claim based on a purported "unjust[] misappropriat[ion]" of Shaw E&I cannot succeed on the merits.

Similarly, AMA's allegations that Gershenson and G&A benefitted from AMA's Proprietary Information are unsupported by facts. As described above, Gershenson did not participate in, or disclose, use or reveal any of AMA's Proprietary Information (as that term is defined in the Agreement) in connection with the April 2008 seminar for Shaw E&I. Gershenson Decl. ¶ 9. Moreover, neither Gershenson nor G&A had any knowledge of AMA's pricing for Shaw E&I, if any existed. Gershenson Decl. ¶ 16. Thus, AMA's unjust enrichment claim based on Gershenson's and G&A's purported receipt of benefits related to the Proprietary Information cannot succeed on the merits.

For the foregoing reasons, AMA cannot demonstrate any likelihood of success on the merits or raise sufficiently serious questions as to the merits of its unsubstantiated unjust

14

enrichment claim against Gershenson and G&A.

(iv)    AMA Cannot Succeed on the Merits of its Tortious Interference Claim Against Gershenson and G&A[4]

AMA bases its tortious interference claim on a self-serving, conclusory assertion that Gershenson and G&A knew, or should have known, about a Training Agreement (as that phrase is defined in the Verified Complaint) between AMA and The Shaw Group, Inc.   Verified Complaint, ¶ 78.  Notably, although AMA cites to and relies upon the Training Agreement for its claims, AMA fails to attach it to any of the papers filed with this Court.  Regardless, and despite AMA's unsupported allegation otherwise, neither Gershenson nor G&A knew about the existence of such Training Agreement until reading about it in the Verified Complaint. Gershenson Decl. ¶ 16.  Gershenson and G&A also did not, and still do not, know the terms of the Training Agreement, including but not limited to any pricing, scope of engagement or upon whom it is binding.  Gershenson Decl. ¶ 16.  Thus, AMA cannot succeed on the merits of its tortious interference claim with a contract against Gershenson or G&A because it simply cannot show that Gershenson and G&A knew of the Training Agreement.

For the foregoing reasons, AMA cannot demonstrate any likelihood of success on the merits or raise sufficiently serious questions as to the merits of its unsubstantiated tortious interference claim against Gershenson and G&A.

(v)    AMA Cannot Obtain Equitable Relief Pursuant to the Doctrine of Unclean Hands

AMA's requests for equitable relief in the form of an injunction and unjust enrichment are barred by the doctrine of unclean hands.  "The doctrine of unclean hands refers to the

---

[4] Although AMA's Verified Complaint contains two claims of tortious interference, AMA's Memorandum of Law in Support of its Motion for Preliminary Injunction only relies upon the claim of tortious interference with a contract. Accordingly, this opposition only addresses the same claim. However, by doing so, Gershenson and G&A do not waive and hereby reserve any and all arguments relating to AMA's purported tortious interference with advantageous business relationships claim.

fundamental principle that he who comes into equity must come with clean hands." *See Johnson & Johnson v. Actavis Group HF*, No. 06 Civ. 8209, 2008 WL 228061 at *9 (S.D.N.Y. January 25, 2008). AMA does not possess clean hands due to their own material breaches of the Agreement.

AMA unequivocally admits that it discovered Gershenson's alleged breach of his Agreement on or about April 16, 2008, but by no later than April 18, 2008. Verified Complaint, ¶¶ 36, 37. Under New York law, when a party to a contract discovers that the other party has breached the contract, the adverse party has "a choice - to treat the entire contract as broken and sue immediately for the breach or reject the proposed breach and continue to treat the contract as valid." *See, e.g., Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D. 2d 932, 934, 686 N.Y.S.2d 911, 934 (N.Y. App. Div. 1999). "The adverse party must, however, make an election and cannot at the same time treat the contract as broken and as subsisting." *Id.* AMA clearly elected the latter option by ignoring the alleged breach and continuing to demand performance under the Agreement from Gershenson through its arrangement of and requests that Gershenson continue to teach additional AMA seminars to AMA's clients. Gershenson Decl. ¶ 10. Specifically, Gershenson delivered training seminars at the request of and for AMA on May 5-7, 2008 in Chicago, Illinois, on May 14-16, 2008 in Huntington Beach, California, and on May 19-21, 2008 in Dallas, Texas. Gershenson Decl. ¶ 10.

After Gershenson continued performing under the Agreement at AMA's behest, AMA failed to compensate Gershenson for his services rendered after April 16, 2008, including any reimbursement for his travel. Gershenson Decl. ¶ 10. To this day, AMA, in material breach of the Agreement, has failed and refused to compensate Gershenson thousands of dollars for his personal services and travel rendered on AMA's behalf *after* April 16. *See* Gershenson Decl. ¶

16

10.  AMA's non-payment of monies owed to Gershenson for personal services rendered under the Agreement constitutes AMA's first material breach of the Agreement.[5]  *See, e.g. McNamara v. Dav-El Services, Inc.*, 798 N.Y.S. 2d 711 (Sup. Ct. Suffolk County 2004) ("[w]hen a party benefitting from a restrictive covenant in a contract breaches that contract, the covenant is not valid and enforceable against the other party").

In addition to and despite the debt owed to Gershenson, AMA unequivocally terminated its Agreement with Gershenson on May 23, 2008 without giving Gershenson any notice, much less the thirty (30) days notice required under the Agreement.  Gershenson Decl. ¶ 11.  Not only is AMA's written termination of the Agreement a tacit admission that the Agreement was still in effect and binding on the parties after April 16, 2008, AMA's termination without the notice required by the Agreement constitutes AMA's second material breach of the Agreement.  *See, e.g. Weintraub v. Schwartz*, 131 A.D.2d 663, 664, 516 N.Y.S. 2d 946, 948-49 (N.Y. App. Div. 1987).

Undaunted by its own material breaches of the Agreement, AMA filed this action against Gershenson for -- ironically -- his alleged breach of the Agreement.  AMA also seeks to enforce the Agreement, specifically its non-solicitation and confidentiality provisions, by entry of preliminary and permanent injunctions against Gershenson.  However, neither law nor equity will permit one party to an agreement to enjoy its benefits without accepting any of its burdens.  *See, e.g., Triple D & E, Inc. v. Van Buren*, 339 N.Y.S. 2d 821, 829 (N.Y. Sup. Ct. 1972) ("[t]he party who breaches an agreement may not enforce the restrictive covenant.").  *See also In re UFG, Int'l, Inc.*, 225 B.R. 51, 55 (S.D.N.Y. 1998) (holding that where an employer breaches an employee's employment agreement, including by terminating the agreement improperly, "[e]ven a reasonably limited covenant not to compete is unenforceable").

---

[5] Gershenson intends to file his own complaint or counterclaim against AMA to recover such monies owed.

For the foregoing reasons, AMA's own conduct prohibits success on the merits of its claims for any equitable relief, including but not limited to its cause of action for unjust enrichment and its request for a preliminary injunction.

(vi)    <u>AMA Cannot Succeed in Obtaining a Preliminary Injunction</u>

In its Verified Complaint, AMA bases its request for a preliminary injunction against Gershenson and G&A on allegations that both Gershenson and G&A violated their "contractual obligations to AMA." Verified Complaint, ¶¶ 51, 63. However, AMA's allegations lack merit.

As to G&A, AMA fails to cite to or attach any contract by and between G&A and AMA to any of the papers filed with this Court, much less a contract containing any form of non-solicitation provision. Nonetheless, AMA's proposed order granting a preliminary injunction attempts to enjoin G&A from soliciting or accepting engagements from AMA's clients or attendees and from disclosing or using AMA's confidential information. In the absence of any written contract between AMA and G&A prohibiting such actions, such relief cannot be granted against G&A. *See, e.g., Twin City Physicians Group, P.C. v. Kaushal*, 225 A.D. 2d 1041, 1042 (N.Y. App. Div. 1996) (denying preliminary injunction against corporate defendants where the record contained no evidence supporting plaintiff's contention that corporate defendants were subject to restrictive covenant). Thus, AMA's allegations of G&A's purported breach of non-existent contractual obligations and request to enforce such non-existent contractual obligations cannot succeed on the merits.

As to Gershenson, AMA's request for a preliminary injunction enforcing the non-solicitation and confidentiality provisions of the Agreement lacks legal support. Pursuant to its express terms, the non-solicitation provision does not survive termination of the Agreement and thus, AMA's unilateral termination of the Agreement relieved any and all obligation or rights of

the parties as to the limited non-solicitation provision of the Agreement. *See* Agreement, p. 5. Thus, AMA's attempt to enforce a non-solicitation provision that became non-binding and ineffective as of May 23, 2008, due to AMA's own conduct, cannot succeed on the merits.

Moreover, AMA's request for a preliminary injunction enjoining Gershenson from soliciting or accepting engagements from AMA's clients or attendees to whom he provided, or was scheduled to provide, services on behalf of AMA, for a period through and including July 25, 2009 is wholly unsupported by the terms of the Agreement itself. *See* AMA's Proposed Order Granting Preliminary Injunction, p. 2. Gershenson's Agreement with AMA provides no support for such a broad and overreaching injunction because, even if it survived termination, the non-solicitation provision of the Agreement would only prohibit Gershenson from soliciting or accepting engagements from AMA's clients to whom he provided, or was scheduled to provide, training services on behalf of AMA, for a period of *one year from the date of acceptance of an engagement from AMA to serve such clients or attendees.* Agreement, Ex. A, p. 2.

Similarly, although the confidentiality provision survived AMA's termination of the Agreement, AMA's prior material breaches of the Agreement as described above excuse Gershenson from any obligation to comply with the confidentiality provision. *See, e.g., Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 667 (S.D.N.Y. 1996) (holding that a material breach of a contract relieves the other party of its obligations to perform under the contract). Thus, AMA has no legal basis or need to seek equitable relief in the form of a preliminary injunction as to the confidentiality provision.

**C.     AMA Cannot Demonstrate Irreparable Harm**

   (i)     AMA's Delay in Seeking Injunctive Relief Shows that AMA Will Not Suffer Irreparable Harm

AMA's delay in seeking injunctive relief against any of the Defendants, including

Gershenson and G&A, demonstrates that AMA is not truly threatened with irreparable harm. *See, e.g. Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417 (S.D.N.Y. 1998). Because "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights," a "[d]elay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F. 2d 273 (2d Cir. 1985). Although courts have not imposed rigid deadlines for seeking preliminary injunctive relief, a delay of as little as ten weeks has been held to be too long and bar entry of a preliminary injunction. *See, e.g., Gidatex, S.R.L.*, 13 F. Supp. 2d at 419 (*citing to Citibank, N.A.*, 756 F. 2d at 276-77).

AMA has not, and cannot, provide any credible explanation for its delay in seeking injunctive relief. *See generally* AMA's Memo. of Law. AMA certainly did not use the four-month delay period to investigate the extent and nature of Gershenson's and G&A's alleged behavior. To the contrary, AMA expressly admits in its Verified Complaint that it discovered Defendants' purported breach of contractual obligations on April 16, 2008. Verified Complaint, ¶ 36. AMA further admits that it knew of Gershenson's and G&A's alleged role in the purported breach by no later than April 18, 2008. Verified Complaint, ¶ 37.

Despite this knowledge, AMA did not notify Gershenson of its concerns, terminate Gershenson's Agreement, commence any lawsuit or seek injunctive relief against Gershenson or G&A. AMA delayed for over a month before taking any action at all in connection with its discovery of Gershenson's purported breach of the Agreement. During that month, and with full knowledge of the purported breach of the Agreement, AMA *continued to use and profit* from both Gershenson's and Syme's personal services by arranging for Gershenson and Syme to continue to teach additional AMA seminars to AMA's clients. Gershenson Decl. ¶ 10. AMA

terminated Gershenson's Agreement on May 23, 2008, without any notice, (Gershenson Decl. ¶ 11), and then waited an additional three months before filing the instant lawsuit and seeking injunctive relief. Thus, AMA's claim of irreparable injury is belied by AMA's own dilatory actions and cannot support AMA's motion for preliminary injunction.

      (ii)     <u>AMA's Claim of Irreparable Harm Is Nothing More than a Speculative Fear</u>

AMA alleges that it will be irreparably injured if Defendants, including Gershenson and G&A, are permitted to continue soliciting and servicing AMA's clients and using AMA's confidential information to do so. Not only does such an allegation presuppose that Gershenson and G&A have already acted improperly, it relies upon AMA's other allegations that Gershenson and G&A violated their purported contractual obligations to AMA by presenting a training seminar to Shaw E&I in April 2008. As described above, AMA has not made any showing that Gershenson or G&A have breached or will breach any valid contractual obligations to AMA. Thus, AMA's claim of irreparable injury based on its unsupported and unfounded theory that Gershenson and G&A may solicit or provide services to some unidentified customer at some point in the future constitutes nothing more than AMA's remote and speculative fears, and cannot support expedited discovery. *See, e.g., Voicestream Wireless Corp. v. All U.S. Communications*, 149 F. Supp. 2d 29, 37 (S.D.N.Y. 2001) ("[a] preliminary injunction will not issue based upon remote or speculative fears.").

In addition to their speculative nature, AMA's fears are unfounded. On August 7, 2008,[6] Gershenson, through his counsel, informed AMA in writing as follows:

> Notwithstanding and without waiver of any and all of Mr. Gershenson's rights and claims against American Management Association International ("AMA"), including, without limitation, those matters set forth in our letter to you dated June 6, 2008, please be advised that Mr. Gershenson has not, and does not

---

[6] This was eight (8) days before Gershenson was served with process, and before he was aware of the lawsuit.

> intend to, solicit or accept engagements for delivery of training services (as limited in the Agreement) from AMA's clients to whom he has provided training services on behalf of AMA *"for one (1) year following the completion of an engagement to such client(s)."*

Gershenson Decl. ¶ 13. Gershenson voluntarily provided such assurances to AMA despite the fact that: (i) Gershenson's Agreement, which he was not in possession of at the time, contained a less restrictive non-solicitation provision; (ii) he was not bound by the restrictive covenant provision of the Agreement since such provision did not survive termination of the Agreement; and (iii) AMA materially breached the Agreement and was precluded from enforcing any restrictive covenants of the Agreement.  Ironically, Gershenson provided such assurances to AMA with the hope of avoiding costly, protracted and unwarranted litigation.  Gershenson Decl. ¶ 14.  The fact that AMA continues to prosecute this litigation against Gershenson in spite of his written assurances is evidence of its heavy handed treatment of Gershenson and proof positive that no good deed goes unpunished.  Whatever the motive behind AMA's assertion of these claims, the facts do not demonstrate the existence of irreparable harm or support injunctive relief.

    (iii)   <u>AMA Has Not Identified Any Irreparable Harm</u>

AMA alleges that Gershenson and G&A have already stolen business from AMA and that, if permitted to continue soliciting and servicing AMA's clients, AMA will be irreparably harmed.  AMA Memo. of Law, pp. 18, 21.  In short, AMA fears that it will suffer a loss of income to Gershenson and G&A.

As a matter of law, lost sales or income do not constitute irreparable harm because they are fully compensable with monetary damages. *See, e.g., Prod. Res. Group, LLC v. Oberman,* No. 03 Civ. 5366, 2003 WL 22350939, at *7 (S.D.N.Y. Aug. 27, 2003).  In this case, AMA claims that it has a contract with at least one customer, The Shaw Group, Inc., that "Syme,

Gershenson and G&A intentionally colluded to interfere with AMA's client relationship with Shaw -- *a relationship they knew was worth countless millions of dollars* . . . ." AMA Memo of Law, pp. 7, 8 (emphasis in original). Clearly, AMA's monetary damages (including lost sales or income) would be easily calculable if AMA ultimately prevailed, based upon a review of AMA's Training Agreement with The Shaw Group, Inc. and past and projected earning for training services to The Shaw Group, Inc., among other things.

AMA also refers to a purported threat of irreparable harm to AMA with respect to its claimed confidential and proprietary information, which simply does not exist. Notwithstanding the fact that AMA has materially breached its Agreement with Gershenson and is precluded from seeking equitable relief from this Court, on June 6, 2008, Gershenson, through his attorneys, informed AMA as follows:

> Mr. Syme and Mr. Gershenson are willing to return, purge from their electronic systems, and refrain from using or disclosing those materials and intellectual property that may rightfully belong to AMA, provided that AMA agrees to do the same.
>
> ***
>
> Please contact the undersigned at your earliest convenience to discuss the demands contained herein and so that arrangements may be made for the exchange of intellectual property belonging to AMA and Mr. Syme or Mr. Gershenson, respectively.

Gershenson Decl. ¶ 12. Neither AMA nor its counsel ever contacted Gershenson or his counsel for the purpose of scheduling a meeting to exchange the intellectual property belonging to the respective parties. Gershenson Decl.¶ 12. Instead, AMA rushed into this Court seeking the extraordinary relief of a preliminary injunction, and claiming irreparable harm where the harm could have been avoided -- and can still be avoided -- by the less drastic means of a simple phone call. At best, AMA's claimed irreparable harm is self-inflicted and purely speculative, for which no preliminary injunction should lie. *See, e.g., Voicestream Wireless Corp. v. All U.S.*

*Communications*, 149 F. Supp. 2d 29, 37 (S.D.N.Y. 2001).

**D.    AMA Cannot Establish that the Balance of Hardships Tips in AMA's Favor**

The balance of equities clearly favors Gershenson and G&A. Despite its refusal to abide by the terms of the Agreement, AMA's actions could even well destroy the career and livelihood of Gershenson and G&A for no purpose other than AMA's desire to stifle rightful competition. AMA wants to have it both ways - to avoid its contractual and other obligations to Gershenson while binding him for no legitimate purpose to onerous restrictions contained in an Agreement that expired upon AMA's termination of the Agreement. Based on its improper actions toward Gershenson, including continuing to profit from his services and then refusing to pay for such services, it would be inequitable to grant AMA the relief it seeks.

In addition, AMA relies upon its own unsubstantiated allegations regarding a single training seminar with a single purported AMA client, Shaw E&I, to assume that Gershenson and G&A are engaging or will engage in wrongful activity. Not only did Gershenson and G&A do absolutely nothing wrong in connection with the April 2008 seminar, AMA has absolutely no basis for the broad injunction it seeks. The injunction sought by AMA against both Gershenson and G&A goes far beyond the restrictive covenant in Gershenson's Agreement, which in any event expired upon AMA's termination of the Agreement. If AMA receives the preliminary injunction it seeks, Gershenson and G&A will essentially be denied the right to work in the management training industry due to the harm to their current reputations as trustworthy, loyal and professional providers of management services. G&A is essentially a one-man company with Gershenson as President, sole owner and sole employee. Gershenson Decl. ¶ 1. Thus, G&A would suffer the same or similar harm as Gershenson if the preliminary injunction requested by AMA is entered.

24

In stark contrast, AMA will suffer no harm in the absence of a preliminary injunction. By its own admissions on its web site, AMA's client base includes organizations worldwide, including the majority of the Fortune 500 companies.  Even if AMA's allegations of losing The Shaw Group, Inc. and Shaw E&I as a customer are true, such loss will have a de minimus effect on AMA and will be fully compensable by monetary damages.  Moreover, AMA alleges that it purportedly has a Training Agreement with The Shaw Group, Inc.  If true, then AMA should not be in a position of losing The Shaw Group, Inc. as a customer.  The equities demand denial of injunctive relief to AMA.

## **CONCLUSION**

Based upon the foregoing, AMA's Motion for Preliminary Injunction should be denied.

Dated:  New York, New York
        August 29, 2008

                                        GREENBERG TRAURIG, LLP

                                        By:  _____
                                             Jason A. Scurti (JAS-3688)
                                             200 Park Avenue
                                             New York, New York 10166
                                             Telephone: (212) 801-9200
                                             Email:  scurtij@gtlaw.com
                                             *Attorneys for Defendants Gershenson and*
                                             *Associates, Inc. and Stephen Gershenson*

Of counsel:

Greenberg Traurig, P.A.
401 East Las Olas Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  (954) 765-0500
DAVID O. BATISTA
Florida Bar No. 175803
LINDA M. RECK
Florida Bar No. 0669474

25