Jason A. Scurti (JAS-3688)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Email:  scurtij@gtlaw.com

David O. Batista
Linda M. Reck
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  (954) 765-0500

*Attorneys for Defendants*
*Gershenson and Associates, Inc. and Stephen Gershenson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN MANAGEMENT ASSOCIATION INTERNATIONAL,<br><br>                    Plaintiff,<br><br>      - against -<br><br>STUART SYME,<br>GERSHENSON AND ASSOCIATES, INC., and<br>STEPHEN GERSHENSON, individually<br>and in his capacity as President of<br>GERSHENSON AND ASSOCIATES, INC.,<br><br>                    Defendants. | Civil Action No.:  **08 CIV-6998 (SHS) (FM)** |

## DEFENDANTS STEPHEN GERSHENSON'S AND GERSHENSON AND ASSOCIATES, INC.'S ANSWER AND COUNTERCLAIMS

Defendants Stephen Gershenson ("Gershenson") and Gershenson and Associates, Inc.

("G&A") (collectively, "Defendants"),[1] by and through their undersigned counsel, hereby file

their answer and affirmative defenses to the Verified Complaint for Injunctive Relief & Damages

---

[1] As defined in this Answer, the term "Defendants" does not include Stuart Syme ("Syme").  In responding to the allegations of the Complaint, Gershenson and G&A are not responding on behalf of Syme, and make no admissions or denials on his behalf, even where such allegation is directed to Gershenson, G&A and Syme, collectively.

("Complaint") filed by Plaintiff American Management Association International ("Plaintiff" or "AMA"), and allege:

## ANSWER

### PRELIMINARY STATEMENT

1.      Defendants admit that Plaintiff purports to set forth an action for monetary damages and injunctive relief, but denies that Plaintiff actually sets forth any such action or is entitled to any relief. Defendants admit that AMA provides management education and training services. Defendants deny the remaining allegations contained in Paragraph 1 of the Complaint.

2.      Defendants admit that AMA provides management education and training services and utilizes independent contractors often referred to as "faculty," "presenters," or "speakers," to conduct training seminars on Plaintiff's behalf and, in some cases, to develop material for AMA. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 2 of the Complaint, and therefore, deny same and demand strict proof thereof.

3.      Gershenson admits that he executed an AMA Independent Contractor Agreement ("Agreement"). G&A admits that it has retained Syme on an independent contractor basis and has paid him for his services. Defendants state that certain allegations of paragraph 3 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff attempts to cite select portions of the Agreement, but deny that such provisions have been completely and/or correctly cited. Defendants further state that the Agreement speaks for itself. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint, and therefore, deny same and demand strict proof thereof.

4.      Defendants deny Paragraph 4 of the Complaint.

5.      Defendants deny Paragraph 5 of the Complaint.

6.      Defendants deny Paragraph 6 of the Complaint.

7.      Defendants admit that Plaintiff seeks injunctive relief, but deny that Plaintiff is entitled to any relief.

### THE PARTIES

8.      Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, and therefore, deny same and demand strict proof thereof.

9.      Defendants admit Paragraph 9 of the Complaint.

10.     Defendants admit Paragraph 10 of the Complaint.

11.     Defendants admit Paragraph 11 of the Complaint.

### JURISDICTION AND VENUE

12.     Defendants admit that Plaintiff purports to set forth a cause of action within the diversity jurisdiction of this Court, but denies that Plaintiff actually sets forth any such action or is entitled to any relief.

13.     Defendants deny Paragraph 13 of the Complaint.

### FACTUAL ALLEGATIONS

**A.    Background**

14.      Defendants admit that AMA provides management education and training services.  Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 of the Complaint, and therefore, deny same and demand strict proof thereof.

15.    Defendants admit that AMA provides management education and training services. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of the Complaint, and therefore, deny same and demand strict proof thereof.

16.    Defendants admit that AMA utilizes independent contractors often referred to as "faculty," "presenters," or "speakers," to conduct training seminars on Plaintiff's behalf and, in some cases, to develop material for AMA. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16 of the Complaint, and therefore, deny same and demand strict proof thereof.

17.    Defendants admit that G&A is a management consulting firm that also provides management training services for AMA, among others. Gershenson admits that he is the President of G&A and has acted in the capacity of a presenter for AMA for approximately 30 years. Defendants deny the remaining allegations contained in Paragraph 17 of the Complaint.

18.    Defendants admit that G&A has retained Syme on an independent contractor basis and has paid him for his services and that Syme has acted in the capacity of a presenter for AMA. Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19.    G&A admits that it has retained Syme on an independent contractor basis and has paid him for his services. G&A admits that, from time to time, it has received payment from AMA for services rendered by Syme. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 of the Complaint, and therefore, deny same and demand strict proof thereof.

20.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, and therefore, deny same and demand strict proof thereof.

21.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, and therefore, deny same and demand strict proof thereof.

22.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, and therefore, deny same and demand strict proof thereof.

23.    Gershenson admits that he executed an AMA Independent Contractor Agreement ("Agreement"), a copy of which is attached to the Complaint as Exhibit B.  Defendants admit that Plaintiff attempts to cite select portions of the Agreement, but deny that such provisions have been completely and/or correctly cited.  Defendants further state that the Agreement speaks for itself.    Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.    The allegations of paragraph 24 contain legal conclusions to which no response is required.    To the extent a response is required, Gershenson admits that he executed the Agreement, a copy of which is attached to the Complaint as Exhibit B.  Defendants admit that Plaintiff attempts to cite select portions of the Agreement, but deny that such provisions have been completely and/or correctly cited.  Defendants further state that the Agreement speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.    The allegations of paragraph 25 contain legal conclusions to which no response is required.    To the extent a response is required, Gershenson admits that he executed the

Agreement, a copy of which is attached to the Complaint as Exhibit B. Defendants admit that Plaintiff attempts to cite select portions of the Agreement, but deny that such provisions have been completely and/or correctly cited. Defendants further state that the Agreement speaks for itself. Defendants deny the remaining allegations contained in Paragraph 25 of the Complaint.

26.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, and therefore, deny same and demand strict proof thereof.

27.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint, and therefore, deny same and demand strict proof thereof.

28.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, and therefore, deny same and demand strict proof thereof.

29.    Defendants deny Paragraph 29 of the Complaint.

30.    Defendants admit that Gershenson has acted as a presenter for AMA and, at various times, has conducted training seminars for subsidiaries of The Shaw Group, Inc., and that AMA has paid G&A for certain work performed by Gershenson and Syme. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 30 of the Complaint, and therefore, deny same and demand strict proof thereof.

31.    Defendants deny Paragraph 31 of the Complaint.

32.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint, and therefore, deny same and demand strict proof thereof.

33.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint, and therefore, deny same and demand strict proof thereof.

34.    Defendants admit that Shaw Environmental & Infrastructure ("Shaw E&I") is a subsidiary of The Shaw Group, Inc.  Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of the Complaint, and therefore, deny same and demand strict proof thereof.

35.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, and therefore, deny same and demand strict proof thereof.

36.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint, and therefore, deny same and demand strict proof thereof.

37.    Defendants admit that G&A received payment for training services rendered by Syme for Shaw E&I, and that G&A paid Syme for such services.  Gershenson denies that he was paid by Shaw E&I. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 37 of the Complaint, and therefore, deny same and demand strict proof thereof.

38.    Defendants deny Paragraph 38 of the Complaint.

39.     Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint, and therefore, deny same and demand strict proof thereof.

40.     Defendants admit that AMA terminated the Agreement by letter dated May 23, 2008. Defendants deny the remaining allegations contained in Paragraph 40 of the Complaint.

41.     Defendants deny Paragraph 41 of the Complaint.

42.     Defendants deny Paragraph 42 of the Complaint.

43.     Gershenson admits that AMA and its counsel sent two letters to him dated May 23, 2008.  Defendants deny the remaining allegations contained in Paragraph 43 of the Complaint.

44.     Defendants deny Paragraph 44 of the Complaint.

45.     Defendants deny Paragraph 45 of the Complaint.

46.     Defendants deny Paragraph 46 of the Complaint.

47.     Defendants deny Paragraph 47 of the Complaint.

## FIRST CAUSE OF ACTION
### (Preliminary and Permanent Injunction)
### (As against all Defendants)

48.     Defendants reallege and incorporate by reference each of their responses set forth in paragraphs 1 through 47 above as though fully set forth herein.

49.     Defendants deny Paragraph 49 of the Complaint.

50.     Defendants deny Paragraph 50 of the Complaint.

51.     Defendants deny Paragraph 51 of the Complaint.

52.     Defendants deny Paragraph 52 of the Complaint.

53.     Defendants deny Paragraph 53 of the Complaint.

54.     Defendants deny Paragraph 54 of the Complaint.

55.     Defendants deny Paragraph 55 of the Complaint.

56.     Defendants deny Paragraph 56 of the Complaint.

57.     Defendants deny Paragraph 57 of the Complaint.

## SECOND CAUSE OF ACTION
### (Breach of Contract)
### (As against Defendant Syme and Gershenson)

58.     Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 57 above as though fully set forth herein.

59.     This allegation states a legal conclusion; otherwise, denied.

60.     Defendants deny Paragraph 60 of the Complaint.

61.     Defendants deny Paragraph 61 of the Complaint.

62.     This allegation states a legal conclusion; otherwise denied.

63.     Defendants deny Paragraph 63 of the Complaint.

64.     Defendants deny Paragraph 64 of the Complaint.

65.     Defendants deny Paragraph 65 of the Complaint.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)
### (As against Defendants Syme and Gershenson)

66.     Defendants reallege and incorporates by reference each of their answers set forth in paragraphs 1 through 65 above as though fully set forth herein.

67.     This allegation states a legal conclusion; otherwise denied.

68.     Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of the Complaint, and therefore, deny same and demand strict proof thereof.

69.    Defendants deny Paragraph 69 of the Complaint.

70.    Defendants deny Paragraph 70 of the Complaint.

71.    This allegation states a legal conclusion; otherwise denied.

72.    Defendants deny Paragraph 72 of the Complaint.

73.    Defendants deny Paragraph 73 of the Complaint.

74.    Defendants deny Paragraph 74 of the Complaint.

75.    Defendants deny Paragraph 75 of the Complaint.

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Contract)
### (As against all Defendants)

76.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 75 above as though fully set forth herein.

77.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint, and therefore, deny same and demand strict proof thereof.

78.    Defendants deny Paragraph 78 of the Complaint.

79.    Defendants deny Paragraph 79 of the Complaint.

80.    Defendants deny Paragraph 80 of the Complaint.

81.    Defendants deny Paragraph 81 of the Complaint.

82.    Defendants deny Paragraph 82 of the Complaint.

83.    Defendants deny Paragraph 83 of the Complaint.

## FIFTH CAUSE OF ACTION
### (Tortious Interference with Advantageous Business Relations)
### (As against all Defendants)

84.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 83 above as though fully set forth herein.

85.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the Complaint, and therefore, deny same and demand strict proof thereof.

86.    Defendants deny Paragraph 86 of the Complaint.

87.    Defendants deny Paragraph 87 of the Complaint.

88.    Defendants deny Paragraph 88 of the Complaint.

89.    Defendants deny Paragraph 89 of the Complaint.

90.    Defendants deny Paragraph 90 of the Complaint.

## SIXTH CAUSE OF ACTION
### (Unfair Competition)
### (As against all Defendants)

91.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 90 above as though fully set forth herein.

92.    Defendants deny Paragraph 92 of the Complaint.

93.    Defendants deny Paragraph 93 of the Complaint.

94.    Defendants deny Paragraph 94 of the Complaint.

95.    Defendants deny Paragraph 95 of the Complaint.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)
### (As against all Defendants)

96.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 95 above as though fully set forth herein.

97.    Defendants deny Paragraph 97 of the Complaint.

98.    Defendants deny Paragraph 98 of the Complaint.

99.    Defendants deny Paragraph 99 of the Complaint.

100.    Defendants deny Paragraph 100 of the Complaint.

## EIGHTH CAUSE OF ACTION
### (Misappropriation of Confidential Information)
### (As against all Defendants)

101.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 100 above as though fully set forth herein.

102.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 of the Complaint, and therefore, deny same and demand strict proof thereof.

103.    Defendants deny Paragraph 103 of the Complaint.

104.    Defendants deny Paragraph 104 of the Complaint.

105.    Defendants deny Paragraph 105 of the Complaint.

106.    Defendants deny Paragraph 106 of the Complaint.

107.    Defendants deny Paragraph 107 of the Complaint.

108.    Defendants deny Paragraph 108 of the Complaint.

## NINTH CAUSE OF ACTION
### (Conversion)
### (As against all Defendants)

109.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 108 above as though fully set forth herein.

110.    Defendants deny Paragraph 110 of the Complaint.

111.    Defendants deny Paragraph 111 of the Complaint.

112.    Defendants state that the Agreement speaks for itself; otherwise, denied.

113.    Defendants deny Paragraph 113 of the Complaint.

114.    Defendants deny Paragraph 114 of the Complaint.

115.    Defendants deny Paragraph 115 of the Complaint.

## TENTH CAUSE OF ACTION
### (Accounting)
### (As against all Defendants)

116.    Defendants reallege and incorporate by reference each of their answers set forth in paragraphs 1 through 115 above as though fully set forth herein.

117.    Defendants deny Paragraph 117 of the Complaint.

118.    Defendants deny Paragraph 118 of the Complaint.

119.    Defendants deny Paragraph 119 of the Complaint.

120.    Defendants deny Paragraph 120 of the Complaint.

121.    Defendants deny Paragraph 121 of the Complaint.

## JURY DEMAND

122.    Defendants hereby demand a trial by jury.

As to Plaintiff's prayers for relief, Defendants deny that Plaintiff is entitled to the relief requested or any other relief.

## GENERAL DENIAL

Defendants deny each and every allegation of the Complaint not expressly admitted herein and demand strict proof thereof.

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses to Plaintiff's Complaint and reserves the right to amend these defenses as discovery continues or the facts warrant:

### First Affirmative Defense - Failure to State a Cause of Action

Count I of Plaintiff's Complaint fails to state a cause of action for preliminary or permanent injunctive relief against Defendants.  Among other things, Plaintiff fails to, and cannot, allege the existence of any contract between it and G&A, much less a restrictive covenant that would bind G&A.  Plaintiff also fails to, and cannot, allege any restrictive covenant that may be prospectively enforced against Gershenson due to AMA's termination of the Agreement.

### Second Affirmative Defense - Failure to State a Cause of Action

Counts II and III of Plaintiff's Complaint fail to state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing against Gershenson.  Among other things, Plaintiff fails to, and cannot, allege any contractual obligation or duty that was breached by Gershenson.  Even assuming arguendo that Plaintiff's allegations are true, which they are not, such purported actions by Gershenson do not breach either the express terms of the Agreement or any implied covenant of good faith and fair dealing.

### Third Affirmative Defense - Failure to State a Cause of Action

Count IV of Plaintiff's Complaint fails to state a cause of action for tortious interference with contract against Defendants.  Among other things, Plaintiff fails to, and cannot, allege any

act by Defendants that would constitute tortious interference.

### Fourth Affirmative Defense - Failure to State a Cause of Action

Count V of Plaintiff's Complaint fails to state a cause of action for tortious interference with advantageous business relations against Defendants. Among other things, Plaintiff fails to, and cannot, specifically allege the identity of the clients with which AMA had purported advantageous business relations and with which Defendants purportedly interfered.

### Fifth Affirmative Defense - Failure to State a Cause of Action

Count VI of Plaintiff's Complaint fails to state a cause of action for unfair competition against Defendants. Among other things, Plaintiff fails to, and cannot, allege any fraud, deception, or abuse of a fiduciary or confidential relationship by Defendants.

### Sixth Affirmative Defense - Failure to State a Cause of Action

Count VII of Plaintiff's Complaint fails to state a cause of action for unjust enrichment against Defendants. Among other things, Plaintiff fails to, and cannot, specifically allege any benefit received by Defendants to which they are not entitled. Instead, Plaintiff summarily alleges that Defendants received the benefits of purported yet unidentified customer relationships. Moreover, Plaintiff's claim for unjust enrichment against Gershenson is barred due to the existence of the Agreement.

### Seventh Affirmative Defense - Failure to State a Cause of Action

Count VIII of Plaintiff's Complaint fails to state a cause of action for misappropriation of confidential information against Defendants. Among other things, Plaintiff fails to, and cannot, specifically identify any purported confidential or proprietary information that Defendants have allegedly used in an improper manner.

### Eighth Affirmative Defense - Failure to State a Cause of Action

Count IX of Plaintiff's Complaint fails to state a cause of action for conversion against Defendants. Among other things, Plaintiff fails to, and cannot, specifically identify or allege any property belonging to AMA that Defendants have refused to return.

### Ninth Affirmative Defense - Failure to State a Cause of Action

Count X of Plaintiff's Complaint fails to state a cause of action for accounting against Defendants. Among other things, Plaintiff fails to, and cannot, allege the elements of such a cause of action, including but not limited to the existence of a complex business transaction or a fiduciary relationship between it and Defendants.

### Tenth Affirmative Defense - Unclean Hands

Plaintiff's claims for equitable relief, including injunctive relief and unjust enrichment, are barred by the doctrine of unclean hands. Among other things, Plaintiff has materially breached the Agreement on at least two occasions.

### Eleventh Affirmative Defense - Prior Breach

Plaintiff's claims for breach of the Agreement and breach of the implied covenant of good faith and fair dealing are barred due to Plaintiff's own prior, material breaches of the Agreement.

### Twelfth Affirmative Defense - Estoppel

Plaintiff's claims are barred by the doctrine of estoppel. Among other things, after discovery of Defendants' purported improper actions, Plaintiff continued to do business with Defendants and profit from Gershenson's personal services. In light of its prior conduct or inaction, Plaintiff cannot now pursue Defendants for such purported improper actions.

### Thirteenth Affirmative Defense - Waiver

Plaintiff's claims are barred by the doctrine of waiver. Among other things, after discovery of Defendants' purported improper actions, Plaintiff continued to do business with Defendants and profit from Gershenson's personal services. In light of its prior conduct or inaction, Plaintiff waived any action against Defendants based on the purported improper actions.

### Fourteenth Affirmative Defense - Laches

Plaintiff's claims are barred by the doctrine of laches. Among other things, after discovery of Defendants' purported improper actions, Plaintiff delayed taking any action for a period of months and, during that time, continued to do business with Defendants and profit from Gershenson's personal services.

### Fifteenth Affirmative Defense - Failure to Mitigate Damages

Plaintiff has failed to mitigate any of the damages it allegedly sustained and such damages should be eliminated or reduced accordingly.

### Sixteenth Affirmative Defense - Setoff

To the extent that Plaintiff is entitled to any recovery on its claims, its recovery is subject to a set-off in favor of Gershenson for the damages asserted in his Counterclaim, which is incorporated herein by reference.

## COUNTERCLAIMS

Counter-Plaintiff/Defendant STEPHEN GERSHENSON ("Gershenson") by and through undersigned counsel, hereby sues Counter-Defendant/Plaintiff AMERICAN MANAGEMENT ASSOCIATION INTERNATIONAL ("AMA") for breach of contract and unjust enrichment and further alleges:

### Parties, Jurisdiction and Venue

1.      This is a counterclaim for damages for breach of contract and unjust enrichment against Counter-Defendant/Plaintiff AMA.   This action arises out of the same or similar transactions and occurrences as alleged in AMA's Complaint

2.      Gershenson is an individual residing in Palm Beach County, Florida.

3.      AMA, upon information and belief, is a corporation organized pursuant to New York law that maintains its principal place of business at 1601 Broadway, New York, New York 10019.

4.      The Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1367 and general principles of ancillary and pendent jurisdiction.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant AMA resides in this judicial district.

6.      All conditions precedent to the prosecution of this Counterclaim have been performed, satisfied, excused or otherwise waived.

7.      Gershenson has been required to retain the services of the undersigned counsel to represent it in this Counterclaim and is obligated to pay counsel an hourly fee for its services.

## Facts

8.    On May 31, 2006, AMA and Gershenson entered into the Independent Contractor Agreement at issue in this litigation (the "Agreement"), a copy of which is attached hereto as Exhibit "1."

9.    Pursuant to its terms, the Agreement superseded all prior agreements between AMA and Gershenson and became effective July 1, 2006 for a term of three (3) years.

10.    Pursuant to the Agreement, Gershenson agreed to periodically deliver certain training seminars at the request of and on behalf of AMA.

11.    Among other sections, paragraphs 6 and 7 of the Agreement obligate AMA to pay Gershenson for fees, travel and expenses associated with Gershenson's delivery of training seminars on behalf of AMA.

12.    Paragraph 6 of Exhibit A to the Agreement provides:

> **Termination**.  Either party may terminate this Agreement at any time for any reason by giving written notice of such termination to the other party at least thirty (30) days before the termination date provided in such written notice.  As of such termination date, this Agreement and all rights and obligations of both parties hereunder shall cease, except as otherwise provided under this Agreement.

13.    In May 2008, at the request of and on behalf of AMA, Gershenson delivered three (3) training seminars under the Agreement.  Specifically, Gershenson delivered training seminars at the request of and for AMA on May 5-7, 2008 in Chicago, Illinois, on May 14-16, 2008 in Huntington Beach, California, and on May 19-21, 2008 in Dallas, Texas (the "Seminars").

14.    Despite AMA's acceptance of Gershenson's performance and Gershenson's timely and proper submission of invoices and documentation, AMA did not pay and has not paid Gershenson the fees and expenses associated with the Seminars.

15.    On May 23, 2008, AMA terminated the Agreement effective immediately without giving the required thirty (30) days or any other prior notice.

16.    As of the termination of the Agreement by AMA, Gershenson was scheduled to deliver numerous training seminars at the request of and on behalf of AMA, many of which were scheduled to occur within thirty (30) days of the May 23, 2008 termination of the Agreement by AMA.

### Count One - Breach of Contract

17.    Gershenson realleges and incorporates by reference herein paragraphs 1 through 16 above as though fully set forth herein.

18.    At all times relevant to the Seminars, the Agreement was a valid and binding contract between Gershenson and AMA.

19.    Pursuant to the Agreement, AMA was obligated to pay fees and expenses to Gershenson in connection with his delivery of three (3) training seminars in May 2008 at the request of and on behalf of AMA.

20.    AMA breached the Agreement by failing to pay fees and expenses to Gershenson in connection with his delivery of three (3) training seminars in May 2008 at the request of and on behalf of AMA.

21.    As a result of AMA's breach of the Agreement, Gershenson has been and continues to be damaged in an amount to be determined at trial.

22.    Pursuant to the Agreement, AMA was required to provide written notice of termination at least thirty (30) days in advance of any termination date.

23.    AMA breached the Agreement by failing to provide written notice of termination at least thirty (30) days in advance of any termination date and by terminating the Agreement effective immediately without any notice.

24.    As a result of AMA's breach of the Agreement, Gershenson has been and continues to be damaged in an amount to be determined at trial, which includes the monies Gershenson would have received from AMA for the training seminars scheduled to occur within thirty (30) days of AMA's improper termination.

### Count Two - Unjust Enrichment
### (Pled in the Alternative to Count One)

25.    Gershenson realleges and incorporates by reference herein paragraphs 1 through 16 above as though fully set forth herein.

26.    In the alternative, and should the Court find that there was no enforceable agreement between AMA and Gershenson encompassing Gershenson's services in connection with the Seminars, Gershenson asserts this action for unjust enrichment.

27.    Upon information and belief, AMA has been enriched and benefitted from the three (3) Seminars delivered by Gershenson at the request of and on behalf of AMA in May 2008 through its receipt of money from those individuals or entities who attended the Seminars.

28.    AMA has not paid Gershenson for the expenses he incurred or the personal services he delivered in connection with the three (3) Seminars delivered by Gershenson at the request of and on behalf of AMA in May 2008.

29.    AMA has been unjustly enriched at the expense of Gershenson by virtue of its receipt and retention of profits from the three (3) Seminars without paying Gershenson for the expenses he incurred or his personal services in connection with the three (3) Seminars

30.    The principles of equity and good conscience militate against permitting AMA to keep the sums due to Gershenson for the expenses he incurred or the personal services he delivered in connection with the three (3) Seminars delivered by Gershenson at the request of and on behalf of AMA in May 2008.

**WHEREFORE**, Defendants Stephen Gershenson and Gershenson and Associates, Inc. having answered the Complaint, respectfully request that the Court dismiss this cause with prejudice, enter judgment in Defendants' favor, award Defendants their costs associated with this action, and award such other and further relief as the Court deems just and proper; and Counter-Plaintiff/Defendant Stephen Gershenson demands judgment against Counter-Defendant/Plaintiff American Management Association International for damages, together with pre- and post-judgment interest, and costs, and for such other relief as this Court deems just and proper.

Dated: New York, New York
         September 4, 2008

GREENBERG TRAURIG, LLP

By: _____
         Jason A. Scurti (JAS-3688)
         200 Park Avenue
         New York, New York 10166
         Telephone: (212) 801-9200
         Email: scurtij@gtlaw.com
         *Attorneys for Defendants*
         *Gershenson and Associates, Inc. and Stephen*
         *Gershenson*

## INDEPENDENT CONTRACTOR AGREEMENT

**THIS AGREEMENT** (the "Agreement") is entered into and effective this 1st day of July 2006, (the "Effective Date") by and between **AMERICAN MANAGEMENT ASSOCIATION INTERNATIONAL**, a non-profit educational organization incorporated by act of the Regents of the University of the State of New York with offices at 1601 Broadway, New York, NY 10019 ("AMA"), and **Stephen Gershenson**, an independent contractor with offices at Gershenson & Associates, Inc, 5979 Bartram Street, Boca Raton, FL 33433 ("Contractor").

**WHEREAS**, AMA is engaged in providing management education products and services to the management community in the context of its educational mission to advance the understanding of the principles, policies, practices and purposes of modern scientific and professional management; and

**WHEREAS**, in furtherance of this educational mission, AMA proposes to retain Contractor to perform certain services (the "Services").

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

1. **Independent Contractor Relationship.** Contractor acknowledges and understands that Contractor and AMA hereby agree that Contractor shall deliver the Services under this Agreement solely as an independent contractor and is not to be considered an employee of AMA or any other person or entity affiliated with AMA for any purpose. Contractor further acknowledges and understands that Contractor and AMA hereby agree that Contractor is not eligible to participate in any AMA employee benefit plans or programs, and Contractor shall not have any claim that entitles Contractor to any benefits under any of AMA's employee benefit plans or programs. Contractor hereby agrees that the terms of this Agreement (including all exhibits and schedules hereto) define and govern Contractor's relationship with AMA and that nothing herein shall be construed as creating an offer of employment, an employment relationship or other agency relationship.

2. **The Services.** Contractor shall deliver the Services to AMA described in Exhibit A attached hereto, and in the manner described therein.

3. **Term and Termination.** Except as may be set forth in Exhibit A concerning termination, the term of this Agreement shall commence on Effective Date above and shall continue in full force and effect until June 30, 2009. However, the terms and conditions of this Agreement shall continue to apply for any period of time after the date of termination during which Contractor shall be engaged in the delivery to or for AMA of the Services.

4. **Relationship of the Parties.** The parties hereto are independent contractors. Contractor shall be self-employed for purposes of meeting its obligations hereunder. Contractor assumes full responsibility for its actions while performing the Services pursuant to this Agreement, and AMA shall not be responsible for Contractor's supervision, daily direction and control, employee compensation (for Contractor's employees, including withholding of taxes, if appropriate), benefits and the like.

1

EXHIBIT

_1_

5.   **Confidentiality.**  In consideration of the granting by AMA of access (if any) to Contractor to AMA Proprietary Information, as hereinafter defined, in connection with the performance of this Agreement, whether acquired directly from AMA or its employees, or by visiting AMA's offices or facilities, Contractor hereby agrees to treat such Proprietary Information in confidence, as follows:

   (a)   Contractor agrees not to disclose Proprietary Information to any person, directly or indirectly, without the written consent of AMA, except to officers, employees, directors of Contractor or persons retained by Contractor for purposes of this Agreement on a need-to-know basis and only after informing such persons of the confidential nature of the information and directing such persons to treat such information confidentially.

   (b)   Contractor agrees not to use or exploit the Proprietary Information for any purpose whatsoever without the written consent of AMA.

   (c)   Upon AMA's request, Contractor shall promptly return to AMA all materials and items furnished to Contractor by AMA and any copies thereof, and to purge any and all documentary, photographic, computerized or other information relating to the Proprietary Information from the records of Contractor.

   Proprietary Information means information and data of and/or related to AMA gathered or made available during the course of this Agreement including, but not limited to, know-how, methods and processes. customer and membership lists, attendee lists, business plans and strategies and the like. Proprietary Information does not include information that either was in the public domain at the time AMA revealed it to Contractor or came into the public domain any time thereafter through no fault or action on the part of Contractor, or has come into Contractor's possession independently (not from a third party source that obtained the Proprietary Information, directly or indirectly, from AMA).

6.   **Fees.**  The fees for the Services to be provided by Contractor are set forth in Exhibit A, or, if applicable, Schedule 1 thereto (sometimes collectively hereinafter "Exhibit A"). If applicable, Contractor shall invoice AMA in accordance with, and at the rates specified in, Exhibit A. It is understood that the schedule of fees set forth in Exhibit A shall be utilized for all activities for the Services governed by this Agreement unless and until replaced by a new schedule, which shall be mutually agreeable to the parties. In this connection, Contractor represents and warrants to AMA that the fees set forth in Exhibit A constitute the entirety of the compensation it is receiving for the Services performed under this Agreement; and Contractor further represents and warrants that it is not receiving a commission or any other compensation from a third party with respect to such Services.

7.   **Travel and Expenses.**  Contractor has absolute discretion with respect to travel and related expenses in connection with delivery of Services. However, AMA will only pay for such expenses that are a direct result of Contractor's strict compliance with AMA's "Travel Policy Manual and Reimbursement Procedures for Independent Contractors" (a copy of which is attached as Exhibit B hereto). If applicable, the subject of a per diem travel expense allowance is included in Schedule 1 to Exhibit A hereto.

2

8.    **Audit Rights.**    During the term of this Agreement, AMA or its duly authorized representative shall have access, at all reasonable times, to Contractor's records supporting the fees and expenses for the Services rendered hereunder. AMA's right to audit such records shall extend beyond the term of this Agreement for a period of one (1) year, during which period Contractor shall preserve all such records.

9.    **Promotional Materials.**    Contractor shall not issue any press release or public announcement which discloses its relationship with AMA or describes the arrangements set forth in this Agreement or the Services contemplated hereunder without the prior written consent of AMA. Contractor shall not use the name, logo or any other mark identifying AMA, or describe its relationship with AMA or the arrangements contemplated herein, in any advertising copy, catalogue, promotional brochure or other publicity, written, visual or otherwise, without the prior consent of AMA.

10.   **Hiring or Retention of Personnel.**  During the term of this Agreement and for one (1) year following the termination hereof, Contractor shall not recruit or hire as an employee or retain on an independent contractual basis any person who is an employee of AMA, without the prior written consent of AMA.

11.   **Warranty, Representation and Indemnification.**

   (a)    Each party hereto represents and warrants that it has all right, title and interest, including, without limitation, copyright rights, in and to its respective intellectual property that it utilizes and/or develops in connection with this Agreement, or that, in the absence of title, it has the right or license to utilize such materials. Each party hereto hereby agrees to defend and to indemnify the other party and to hold that party harmless from and against any and all third-party claims, including reasonable attorneys' fees, relating to or arising out of that that party's violation of third-party intellectual property rights, including, without limitation, copyright, trademark, trade name or patent rights, during its performance of this Agreement. .

   (b)    In addition, each party to this Agreement agrees to defend, indemnify and to hold that other party harmless with respect to any and all third party claims, including reasonable attorneys' fees, which derive from a party's actions or conduct including, but not limited to, any party's failure to perform its responsibilities hereunder or from such failure on the part of persons for whom such party is responsible, or from a breach of their respective representations herein.

   (c)    Further, a party seeking indemnification pursuant to this Agreement (an "Indemnified Party") shall give prompt notice to the party from whom such indemnification is sought (the "Indemnifying Party") of the assertion of any lawsuit or claim by a third party (a "Claim") in respect of which indemnity may be sought hereunder, and shall give the Indemnifying Party such information with respect thereto as the Indemnifying Party may reasonably request. Notwithstanding the forgoing, the right to indemnification hereunder shall not be affected by any failure of the Indemnified Party to give any notice (or the delay by the Indemnified Party to give any notice) unless, and then only to the extent that, the rights and remedies of the Indemnifying Party shall have been materially prejudiced as a result of the failure to give, or the delay in giving, such notice. The Indemnifying Party shall have the right, at its expense, to control such Claim upon prompt notice to the

3

Indemnified Party of its election to do so.  To the extent requested by the Indemnifying Party, the Indemnified Party, at the Indemnifying Party's sole cost and expense, shall cooperate with and assist the Indemnifying Party in connection with such Claim. The Indemnified Party shall have the right, at the Indemnified Party's sole cost and expense to appoint a single counsel to consult with and remain advised by the Indemnifying Party in connection with such Claim.

12.  **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

13.  **Waiver.** The failure of either party at any time to require performance or compliance by the other of any of its obligations hereunder shall in no way affect the right to require performance or compliance at any time thereafter.  The waiver by either party of a breach of any provision of this Agreement by the other shall not be taken or held to be a waiver of any preceding or succeeding breach of such provision or as a waiver of the provision itself.  No waiver of any kind shall be effective or binding unless it is in writing and signed by the party against which such waiver is sought to be enforced.

14.  **Complete Agreement.**  This Agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the parties as to the subject matter hereof, and supersedes all prior agreements, understandings or representations, whether oral or written, express or implied, between the parties, relative to the subject matter hereof.

15.  **Severability.**  In the event one or more of the provisions of this Agreement is declared invalid or otherwise unenforceable, the enforceability of the remaining provisions shall be unimpaired.

16.  **Modification and Assignment.**

(a)  This Agreement may not be modified, waived, revised or amended except by a written instrument signed by each party.

(b)  Contractor may not transfer or assign its rights and obligations of this Agreement to any other party without the prior written consent of AMA.  AMA acknowledges that Contractor may, at its sole discretion and at its own expense, hire and retain employees or contractors in connection with Contractor's business.  However, AMA shall have no obligation to such employees or contractors, even if they are performing Services for Contractor in connection with this Agreement, and Contractor shall be responsible for all activities of its employees and sub-contractors.  Further, Contractor agrees to defend, indemnify and hold AMA harmless for any claims from or in respect to such persons (including reasonable attorney's fees).

(c)  This Agreement may be assigned by AMA to any of its corporate affiliates, licensees, subsidiaries or partners worldwide.

17.  **Force Majeure.**  Neither party shall be liable or deemed to be in default for any delay or failure in performance of any obligation under this Agreement or interruption of service resulting directly or indirectly from any cause beyond the control of such party.  A party

4

claiming such force majeure shall provide written notice of such to the other party.

18.  **Notices.**  Unless otherwise set forth in Exhibit A, all written notices, required of either party shall be deemed to have been given when delivered, via certified mail, return receipt requested, or an overnight courier service, or faxed to the other party at any of the following addresses:

American Management Association International
1601 Broadway
New York, NY  10019-7420
Attn:  General Counsel
Telephone:     212-586-8100
Facsimile:     212-903-8033

Independent Contractor

Name: Stephen Gershenson

Address: 5979 Bartram Street
         Boca Raton, FL 33433
         United States of America

Telephone: 561-393-0722

Facsimile: 561-393-0722

19.  **Survival of Rights, Duties and Obligations.**  Termination or expiration of this Agreement for any reason shall not release either party from any liability which, at the time of termination or expiration, has already accrued to the other party. Further, specifically, the rights duties and other obligations set forth in paragraphs 5, 8, 10 and 11 of this Agreement shall survive termination or expiration of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as on the date first above written.

AMERICAN MANAGEMENT                         INDEPENDENT CONTRACTOR
ASSOCIATION INTERNATIONAL

By: _____              By: _____

Date: _____               Date: _____

5

**EXHIBIT A**
**TO INDEPENDENT CONTRACTOR AGREEMENT**
(Delivery of Seminars and/or Other Content or Events)

This is Exhibit A to the Attached Independent Contractor Agreement between Stephen Gershenson ("Contractor", "you", and/or "your") and American Management Association International ("AMA") (the "Agreement") to deliver certain Services (the " Services") as an AMA contractor for delivery of seminars and/or other content or events, subject to the terms and conditions herein and in the Agreement.

1.  **Scope of Services.** From time to time during the term of this Agreement, as AMA and Contractor may agree, Contractor shall provide the Services, as set forth in Schedule 1 hereto. Such Services shall be governed by the following:

    (a)     AMA shall have the right to offer you a proposed engagement to provide Services at dates and locations selected by AMA. You shall have the right in your sole discretion to accept or reject such a proposed engagement. In the event that you reject a proposed engagement, AMA has the right to offer it to another Contractor. After you are offered an engagement, AMA will send you a Confirmation Notice (the "Confirmation Notice"), by fax, e-mail or regular mail, with the details of the proposed engagement. Your acceptance of the engagement will be deemed to be complete only upon AMA's receipt of your acceptance of the Confirmation Notice. Such acceptance must be received by AMA within ten (10) business days of the date of the Confirmation Notice. In the event that the acceptance of the Confirmation Notice is not received by AMA within the ten (10) business day period, AMA is free to offer the engagement to another Contractor.

    (b)     Notwithstanding receipt of your confirmation acceptance by AMA, engagements may be modified or cancelled by AMA at any time, for any reason. AMA will notify you of the change or cancellation by phone, fax, e-mail or overnight mail. AMA is free to reassign the engagement to another Contractor and you will be compensated only for AMA authorized pre-delivery related expenses you may have incurred in preparation for the engagement. If you are notified of the change or cancellation less than ten (10) business days in advance of the first day of the scheduled delivery of the engagement, and the cancellation is not due to low count registration (as determined by AMA), an AMA client request to cancel or reschedule, facilities emergencies or force majeure type situations (as described in the Agreement, and as determined by AMA), you will be compensated as if you had completed the engagement, exclusive of travel expense reimbursement and/or any applicable per diem.

    (c)     AMA expects that you will exercise your discretion and utilize your skills, techniques and experiences to determine the most effective method and means of delivering the topics and objectives of the AMA course(s) which you are engaged to deliver.

    (d)     In order to protect against potential legal liability, you agree to ensure that all printed, audio-visual and multi-media materials provided by you (other than

1

materials provided by AMA) to be shown or disseminated in AMA's public seminar sessions and/or delivered on-site to AMA's corporate clients by you or on your behalf during an engagement, (i) are used only with express written permission of the owners of the materials, and (ii) are approved by AMA prior to use or dissemination by you or your staff during the engagement. In this connection, regardless of authorization and approval by AMA, you assume all legal responsibility for securing the appropriate permission in writing prior to the use and/or dissemination of any such materials, and you hereby agree to defend, indemnify and hold AMA harmless with respect to all claims (including reasonable attorneys' fees) arising out of the use of such materials provided and/or disseminated by you or on your behalf during an AMA engagement of your Services.

(e)     In order to aid AMA in its evaluation of its courses, you agree to (i) explain and implement AMA's evaluation process for its courses/events and ensure that all documents related to this evaluation process are completed by you and/or the attendees and returned to AMA; and (ii) provide AMA with an accurate accounting of attendance at an AMA course/event.

2.  **AMA Representatives.** In all matters relating to your Services provided hereunder, AMA shall be represented by its Manager, Independent Contractors, Instruction and Development, or his/her designee.

3.  **Consideration for Services.** As consideration for all the Services rendered hereunder as an independent contractor, AMA shall pay you as set forth in Schedule 1 hereto for the particular Services rendered by you. At the end of each year, if applicable, you will receive IRS form 1099 from AMA, reflecting the monies paid to you by AMA for the Services rendered hereunder. The provision of the Services herein by you shall not result in any other form of compensation or benefits to you by AMA. As a self-employed independent contractor you shall be solely responsible for the payment and reporting of federal, state and/or local income taxes and AMA shall not be responsible for any withholding of federal, state or local income taxes, FICA, medical insurance or the like, with respect to any payment made herewith.

4.  **Other Clients.** Except as expressly provided herein, nothing in this Agreement shall restrict you from offering speaking, teaching, consulting or other Services to any other organization, corporation, institution or person. Your acceptance of an engagement from AMA, however, indicates your understanding and agreement not to solicit or accept engagements from AMA's clients or attendees to whom you have provided or will provide Services on behalf of AMA, for one (1) year following the acceptance of an engagement from AMA to serve such client(s) or attendees. The foregoing restrictions include, but are not limited to, soliciting attendees for, or accepting from such attendees, assignments for on-site engagements, distribution of non-AMA course materials and/or the presentation of logos, copyrights and trademarks other than those of AMA and related affiliates. These restrictions are limited to the delivery of educational or training Services substantially similar in scope and/or method of delivery to those you provide on behalf of AMA. Any inquiries to the Contractor relating to such Services from or on behalf of AMA clients and/or attendees during the applicable time period set out herein, shall be referred by the Contractor to AMA.

5. **Ownership of and Title to Intellectual Property.** All intellectual property supplied by AMA to Contractor in connection with this Agreement, including, but not limited to, seminar or course notebooks and/or other materials, as between AMA and Contractor, shall remain the exclusive property of AMA.

6. **Termination.** Either party may terminate this Agreement at any time for any reason by giving written notice of such termination to the other party at least thirty (30) days before the termination date provided in such written notice. As of such termination date, this Agreement and all rights and obligations of both parties hereunder shall cease, except as otherwise provided under this Agreement.

**AMERICAN MANAGEMENT ASSOCIATION INTERNATIONAL**

By: _____     Title: _____ SVP _____

(Name)                            Date: _____ 6|13|06 _____


**INDEPENDENT CONTRACTOR**

Agreed to and Accepted this _31_ day of _May_ _____ 200 6

By: _____     Title: _Pres._ _____

(Name)

3

**SCHEDULE 1 to EXHIBIT A**
**to INDEPENDENT CONTRACTOR AGREEMENT**
(Delivery of Seminars and/or other Content or Events)

| | |
|---|---|
| **To:** Stephen Gershenson<br>President<br>Gershenson & Associates, Inc<br>5979 Bartram Street<br>Boca Raton, FL 33433<br><br>**From:** Sheri Brown<br>Manager, Independent Contractors,<br>Instruction and Development<br>American Management Association<br>International<br>1601 Broadway<br>New York, NY 10019 | _____ **Basic Delivery Confirmation Notice**<br>_____ **Additional Assignment s) Notice**<br><br><br>**Contractor ID: G007**<br>**Date: May 22, 2006** |

Pursuant to the terms and conditions of your Independent Contractor Agreement (the "Agreement") with AMA, the parties hereby confirm that you may, from time to time, deliver the following AMA courses:

1. Scope of Work:

   The conduct of Seminars:

   4251 Technical Project Management: Planning, Scheduling and Controlling
   6503 Improving Your Project Management Skills: The Basics for Success
   6504 Senior Project Management
   6515 Information Technology Project Management
   6523 Best Practices for the Multi-Project Manager
   6525 Project Management Office
   6531 Process Management: Process Mapping and Work Simplification

   In addition, the delivery of AMA On-Site corporate training as scheduled anywhere in the World by AMA is subject to any additional conditions that may be specified by corporate clients.

2. Payment for Services (Fee plus, if applicable, the appropriate Per Diem as per AMA Travel Policy):

   Public Seminar No. 4251 at the daily rate of $750 per day to a maximum of 26 actual attending Participants at any given session. If the number of actual attending participants exceeds 26, Stephen Gershenson shall instead receive $85 per Participant.
   Public Seminar No. 6503 at the daily rate of $750 per day to a maximum of 26 actual attending Participants at any given session. If the number of actual attending participants exceeds 26, Stephen Gershenson shall instead receive $85 per Participant.
   Public Seminar No. 6515 at the daily rate of $750 per day to a maximum of 30 actual attending Participants at any given session. If the number of actual attending participants exceeds 30, Stephen Gershenson shall instead receive $85 per Participant.
   Public Seminar No. 6523 at the daily rate of $750 per day to a maximum of 26 actual attending Participants

4

at any given session. If the number of actual attending participants exceeds 26, Stephen Gershenson shall instead receive $85 per Participant.

Public Seminar No. 6525 at the daily rate of $750 per day to a maximum of 26 actual attending Participants at any given session. If the number of actual attending participants exceeds 26, Stephen Gershenson shall instead receive $85 per Participant.

The contents of all the seminars listed in (1) above adapted to the needs of AMA's corporate clients shall be delivered at the following rates:

Seminar No. 4251 at the daily rate of $900
Seminar No. 6503 at the daily rate of $900
Seminar No. 6504 at the daily rate of $900
Seminar No. 6515 at the daily rate of $900
Seminar No. 6523 at the daily rate of $900
Seminar No. 6525 at the daily rate of $900
Seminar No. 6531 at the daily rate of $900

*ALL SATURDAY DELIVERIES @ $1,800.00*

The foregoing rates and specific course assignments shall be subject to negotiation and revision during the term hereof. Any change in rates shall require the written approval of both parties.

Read and Accepted By:

_____
**(Independent Contractor)**

Date: *31/May 06* _____

5